In the Matter of the Application of MINNEGASCO, A DIVISION OF ARKLA, INC., for Authority to Increase Its Rates for Natural Gas Service in the State of Minnesota.

No. C2–95–876.

Court of Appeals of Minnesota.

Dec. 17, 1996.

Review Granted Feb. 26, 1997.

See also 549 N.W.2d 904.

Samuel L. Hanson, Briggs and Morgan, Miggie E. Cramblit, Minnegasco, Div. of NorAm Energy Corp., Minneapolis, Paul T. Ruxin, Jones, Day, Reavis & Pogue, Cleveland, OH, for Relator Minnegasco.

Hubert H. Humphrey III, Attorney General, Margaret E. Hendriksen, Anu Seam, Assistant Attorneys General, St. Paul, for Respondent Minnesota Public Utilities Commission.

Scott W. Johnson, Faegre & Benson, P.L.L.P., Minneapolis, for Amicus Curiae American Gas Association.

Considered and decided by
SCHUMACHER, P.J., and KLAPHAKE
and AMUNDSON, JJ.

## OPINION

SCHUMACHER, Judge.

Following rate proceedings, respondent Minnesota Public Utilities Commission (MPUC) issued an order that imputed to relator Minnegasco, a Division of Arkla, Inc., a certain percentage of revenues from an affiliated, unregulated business. Minnegasco's appeal to this court was stayed, pending the supreme court's decision in *Minnegasco v. Minnesota Pub. Utils. Comm'n*, 529 N.W.2d 413 (Minn.App.1995), *rev'd*, 549 N.W.2d 904 (Minn.1996) (*MAC* ).[1] After the supreme court issued its decision in *MAC*, Minnegasco's appeal was reinstated. We reverse and remand to the MPUC to revise Minnegasco's rates prospectively, in accordance with the supreme court's decision in *MAC*.

## FACTS

Minnegasco is a public utility regulated by the MPUC. In November 1993, Minnegasco petitioned the MPUC to increase its rates. The MPUC authorized Minnegasco to begin charging interim rates, effective February 1994. The MPUC conducted a hearing and set new final rates.

Minnegasco is affiliated with an unregulated appliance service business, which uses the "Minnegasco" name. The MPUC found value in Minnegasco's name, image, and reputation (i.e., goodwill). The MPUC concluded that by contributing to this goodwill, Minnegasco's ratepayers were essentially contributing to the unregulated business's profits. To compensate the ratepayers for this "contribution," the MPUC imputed 1% of the unregulated business's gross revenues to Minnegasco, resulting in a reduction in rates that Minnegasco was authorized to charge ratepayers.

Minnegasco's appeal to this court was stayed, pending the supreme court's decision in *MAC*. The supreme court issued its decision in *MAC* in June 1996, concluding that the MPUC lacked statutory authority to impute revenue to Minnegasco for the value of goodwill contributed by ratepayers to the unregulated appliance business. In light of *MAC*, Minnegasco argues that we should remand this case to the MPUC with directions to authorize Minnegasco to recover rates that it should have received, absent the unlawful imputation of revenues.

## ISSUE

May the MPUC apply *MAC* retroactively by adjusting rates previously set in this case?

## ANALYSIS

Minnegasco claims that on remand, the MPUC should adjust the rates that Minnegasco has been receiving from ratepayers since February 1994, because, according to the supreme court's decision in *MAC*, those rates have unlawfully imputed to Minnegasco a percentage of the unregulated appliance business's gross revenues.

The MPUC, as a creature of statute, has only the authority given to it by the legislature. *MAC*, 549 N.W.2d at 907. Whether the MPUC has authority to act is a legal question, which this court may determine de novo. *Id.*

---

**1.** The parties' reference to the case as *MAC*, apparently derives from an acronym for the complaining party in that case, the Minnesota Alliance for Fair Competition.

■ Certainly, the MPUC has the authority to amend an order, should it be reversed on appeal; the question is whether the amendment must occur prospectively from the date of the MPUC's order after remand, or whether the amendment may be applied retroactively from the date of the order that has been reversed.

The legislature has not explicitly addressed the MPUC's authority following an appeal and subsequent remand. Several provisions, however, provide insight into the legislature's intent. For example, all rates must be "just and reasonable." Minn.Stat. § 216B.03 (1996). This section supports Minnegasco's position that the MPUC should be able to change unjust or unreasonable rates following reversal and remand.

The legislature has also stated, however, that rates fixed by the MPUC following a rate hearing "shall thereafter be observed until changed, as provided by this chapter." Minn.Stat. § 216B.16, subd. 5 (1996). Furthermore, if an investigation by the MPUC reveals that rates are unreasonable or unlawful,

> the [MPUC] shall determine and by order fix reasonable rates * * * to be imposed, observed and followed *in the future* in lieu of those found to be unreasonable or unlawful.

Minn.Stat. § 216B.23, subd. 1 (1996) (emphasis added). These provisions suggest that rates must be applied prospectively from the date of any MPUC order.

Upon a reversal by this court, the MPUC "shall proceed to determine the reasonableness of the rates * * * on the merits." Minn.Stat. § 216.27 (1996). When read in conjunction with sections 216B.23 and 216B.16, subd. 5, this provision suggests that

on remand, the MPUC may only change rates prospectively.

■ The legislature has also stated:

> The [MPUC] may at any time, on its own motion or upon motion of an interested party * * * rescind, alter or amend any order fixing rates * * * Any order rescinding, altering, amending or reopening a prior order shall have *the same effect as an original order.*

Minn.Stat. § 216B.25 (1996) (emphasis added). In another, similar, provision authorizing the MPUC to grant applications for rehearing, the legislature has stated:

> If in the commission's judgment, after the rehearing, it shall appear that the original decision, order or determination is in any respect unlawful or unreasonable, the commission may reverse, change, modify or suspend the original action accordingly. Any decision, order or determination made after the rehearing reversing, changing, modifying or suspending the original determination shall have the *same force and effect as an original decision, order or determination.*

Minn.Stat. § 216B.27, subd. 3 (1996) (emphasis added). Therefore, because the MPUC's original orders must be applied prospectively, according to Minn.Stat. § 216B.23, an amended order must also be applied prospectively.

Prior to 1983, appeals from the MPUC proceeded to the district court, which had the authority to "vacate[ ] and set aside" an MPUC order, upon a determination that the rates set by the order were unreasonable and unlawful. Minn.Stat. § 216.25 (1982).[2] Since 1983, appeals from MPUC orders come to this court pursuant to chapter 14, the administrative procedure act. Minn.Stat. § 216B.52 (1996) and Minn.Stat. § 216.25.

---

**2.** The supreme court interpreted that authority as follows:

> We think the only feasible rule is that, when an order of the commission is set aside and vacated by the court upon an appeal under § 216.25, the matter stands before the commission exactly as if no order had been made * * *.

*Rock Island Motor Transit Co. v. Murphy Motor Freight Lines,* 239 Minn. 284, 293, 58 N.W.2d 723, 729 (1953); *see also Indianhead Truck Line,*

*Inc. v. Hvidsten Transport, Inc.,* 268 Minn. 176, 185, 128 N.W.2d 334, 341–42 (1964) (stating that when order is vacated and set aside on appeal, the preceding order is left "without any efficacy whatsoever"); *State v. Northern Pac. Ry. Co.,* 229 Minn. 312, 330, 39 N.W.2d 752, 762 (1949) (stating that "[i]f the notice of appeal presents to the district court a material issue upon which the commission's findings and order are found to be unreasonable or unlawful, the entire order of the commission must be vacated and set aside").

Chapter 14 authorizes this court to remand, reverse, or modify an agency decision. Minn.Stat. § 14.69 (1996). No longer may an MPUC order be "vacated" on appeal upon a determination that rates are unreasonable.

Minnegasco cites *Northwestern Bell Tel. Co. v. State*, 299 Minn. 1, 216 N.W.2d 841 (1974), where the court addressed the issue whether the district court had erred by remanding telephone rate proceedings to the MPUC (at that time known as the Minnesota Public Service Commission) to "recompute revenue requirements and to determine an appropriate refund." *Id.* at 28, 216 N.W.2d at 858. The court found no statutory impediment to the refund order in the statutes governing telephone rates. *Id.* at 29, 216 N.W.2d at 858.

The *Northwestern Bell* decision is distinguishable upon two grounds. First, the telephone statutes under consideration in *Northwestern Bell* did not indicate whether rates should be enforced or suspended pending appeal. Chapter 216B, however, specifically provides that absent a request for a stay, rates continue to be enforced pending appeal. Minn.Stat. § 216B.53 (1996). Therefore, absent a stay, the legislature apparently intended that the MPUC lacks the power to retroactively adjust rates when an appeal is concluded.

Second, the telephone statutes at issue in *Northwestern Bell* stated: "[I]f the court finds that the order appealed from is unjust, unreasonable, and not supported by the evidence, it shall make such order **to take the place of the order appealed from** as is justified by the record before it." *Id.* at 29, 216 N.W.2d at 858 (quoting Minn.Stat. § 237.25 (1974)) (emphasis added). Here, on the other hand, chapter 216 provides that upon a reversal by this court, the MPUC "shall proceed to determine the reasonableness of the rates * * * on the merits." Minn.Stat. § 216.27.

■ We are persuaded by the supreme court's decision in *Peoples Natural Gas Company v. Minnesota Pub. Utils. Comm'n*, 369 N.W.2d 530 (Minn.1985). There, the court addressed a situation where the MPUC had ordered a company to refund rates collected in contravention of an MPUC order for inter-

im rates. The court observed that retroactive ratemaking is prohibited, explaining:

> Ratemaking is a quasi-legislative function * * * and legislation operates prospectively. Indeed, the Public Utility Act expressly prohibits retroactive ratemaking. Minn. Stat. § 216B.23, subd. 1 (1984), provides: "[T]he commission shall * * * by order fix reasonable rates * * * *to be imposed, observed and followed in the future.*" (Emphasis added.) *See also* Minn.Stat. § 216B.16, subd. 5 (1980) ("If, after the hearing, the Commission finds the rates to be unjust or unreasonable or discriminatory, the commission shall determine the level of rates to be charged or applied by the utility * * * and the rates are thereafter to be observed * * *. ").

*Id.* at 533. The *Peoples* court concluded that the MPUC had no authority to order the disputed refunds. *Id.* at 534. The court found significant the fact that the legislature had not expressly granted refund powers to the MPUC, noting that courts are reluctant "to expand by implication upon express legislative grants of authority to administrative agencies." *Id.* at 535. The court concluded:

> This much is clear. Public regulation of utility rates is an intricate, ongoing process. A reallocation of rates may set in motion an ever-widening set of consequences and adjustments, and a refund not under bond may further complicate these consequences.

*Id.* The *Peoples* decision supports our conclusion that the MPUC lacks authority, in the absence of express legislative sanction, to retroactively amend an order following remand by this court.

In light of our decision, we need not address the MPUC's alternate argument that Minnegasco's appeal has been rendered moot by intervening rate proceedings.

## DECISION

The decision of the MPUC to impute revenues to Minnegasco is reversed, and this case is remanded to the MPUC to prospectively

adjust rates in accordance with the supreme court's decision in *MAC.*

*Reversed and remanded.*