In the Matter of the Application of MIN-NEGASCO, a Division of Arkla, Inc., for Authority to Increase Its Rates for Natural Gas Service in the State of Minnesota.

No. C2–95–876.

Supreme Court of Minnesota.

July 3, 1997.

See also 549 N.W.2d 904.

Miggie E. Cramblit & Douglas W. Peterson, Minnegasco, a Division of NorAm Energy Corp., Samuel L. Hanson, Briggs & Morgan, Minneapolis (Paul T. Ruxin, Jones, Day, Reavis & Pogue, Chicago, IL, of counsel), for relator.

Hubert H. Humphrey, III, Attorney General, Margie E. Hendriksen, Assistant Attorney General, St. Paul, for respondent.

## OPINION

KEITH, Chief Justice.

This case requires us to consider the proper practical effect of *Minnegasco v. Public Utils. Comm'n,* 549 N.W.2d 904, 909–10 (Minn.1996) (*"MAC"*), in which we concluded that the Minnesota Public Utilities Commission exceeded its statutory authority in setting natural gas rates. Before *MAC* was decided, Minnegasco filed this rate case with the Commission in 1993. The Commission issued a final rate order in this case and Minnegasco appealed; however, the appeal was stayed in the court of appeals pending resolution of *MAC.* In *MAC,* Minnegasco successfully challenged the Commission's authority to impute certain good-will revenue to Minnegasco and to allocate certain costs to its affiliate. *Id.* The stay was then lifted in this 1993 rate case, where, as in *MAC,* Minnegasco had questioned the Commission's authority to impute good-will revenue. The court of appeals recognized that *MAC* settled the issue of Commission authority to impute such revenue, but held that the Commission also lacks statutory authority to "retroactively" alter a rate order, even when the order has·been reversed and remanded after judicial review. *See In re Application of Minnegasco,* 556 N.W.2d 607, 609–10 (Minn.App. 1996) (*"Minnegasco"*). We reverse and hold that, on remand, the Commission has implied statutory authority to order revenue recoupment to compensate Minnegasco for losses occasioned by the Commission's unlawful imputation of good-will revenue.

I.

Minnegasco is a public utility that distributes natural gas. Minnegasco's rates are regulated by the Commission pursuant to Minnesota Statutes chapter 216B. Chapter 216B allows public utilities to file rate cases and propose rate changes to the Commission, which is charged by law to ensure that rates are "just and reasonable" considering the needs of both the public and the regulated utility. *See* Minn.Stat. §§ 216B.03, 216B.16, subds. 1, 3–6 (1996).

On November 5, 1993, Minnegasco filed this rate case with the Commission requesting a $22,700,000 increase in gross annual revenue ("the 1993 rate case"). *See In the Matter of the Application of Minnegasco, a Division of Arkla, Inc., for Authority to Increase Its Rates for Natural Gas Service in Minnesota,* No. G–008/GR–93–1090. On January 31, 1994, the Commission issued an interim rate order authorizing an interim rate increase of $14,600,000 in gross annual revenue for service rendered on or after February 1, 1994. Certain issues were referred to an administrative law judge, and the case was contested throughout most of 1994.

While Minnegasco's 1993 rate case was pending before the Commission, the Commission took up a complaint by the Minnesota Alliance for Fair Competition ("MAC")—a trade association of businesses in competition with Minnegasco's affiliated but unregulated appliance business. *See In the Matter of the Complaint of the Minnesota Alliance for Fair Competition Against Minnegasco, a Division of Arkla, Inc.,* No. G–008/C–91–942. The Commission accepted MAC's arguments that Minnegasco had subsidized its affiliate and, consequently, Minnegasco's revenue had been understated and its costs overstated. On March 24, 1994, the Commission ruled that: (1) revenue should be imputed to Minnegasco for the value of its good will used but not paid for by its affiliate; and (2) a portion of the costs claimed by Minnegasco for gas leak checks should be allocated instead to its affiliate. Minnegasco appealed these rulings to the court of appeals, but that court ultimately affirmed the Commission's authority. *See MAC,* 529 N.W.2d 413, 418,

420 (Minn.App.1995), *rev'd,* 549 N.W.2d at 910.

The Commission relied on its rulings in the *MAC* complaint case to formulate its final rate order in Minnegasco's 1993 rate case. On October 24, 1994, the Commission issued its final rate order, which imputed revenue for good will to Minnegasco and allocated certain gas-leak-check costs to its affiliate. This order allowed Minnegasco an $8,086,000 increase in gross annual revenue—approximately $6,500,000 less than the increase authorized by the Commission's interim order. The Commission affirmed its final rate order, with minor adjustments, after reconsideration on April 4, 1995. On May 30, 1995, after further alterations to the rate calculations, the Commission ordered an interim rate refund of approximately $7.8 million to account for 15 months of over-collection under the Commission's interim rate order. *See* Minn. Stat. § 216B.16, subd. 3. Minnegasco appealed the Commission's good-will ruling to the court of appeals, and the appeal was stayed pending this court's resolution of the *MAC* case.

While Minnegasco appealed *MAC* to this court and challenged the 1993 rate case orders in the court of appeals, Minnegasco filed a new rate case with the Commission on August 11, 1995 ("the 1995 rate case"). *See In the Matter of the Application of Minnegasco, a Division of NorAm Energy Corp., for Authority to Increase Its Natural Gas Rates in Minnesota,* No. G–008/GR–95–700. In its 1995 rate case filing, Minnegasco requested an additional $24,349,000 increase in gross annual revenue. The Commission issued an interim rate order in the 1995 rate case effective October 10, 1995, allowing Minnegasco a $17,772,000 gross annual revenue increase. On June 10, 1996, in its final rate order in the 1995 rate case, the Commission reduced Minnegasco's gross annual revenue increase to $12,882,000, again necessitating a refund to customers pursuant to Minn.Stat. § 216B.16, subd. 3. The rate orders in the 1995 rate case superseded the rate orders in the 1993 rate case. *See id.* § 216B.16, subd. 5.

Three days later, on June 13, 1996, we reversed the court of appeals and rejected the Commission's rulings on the MAC complaint. *See MAC,* 549 N.W.2d at 909–10. We held that the Commission lacked statutory authority to impute revenue to Minnegasco for the value of its good will used but not paid for by its affiliate, and to allocate to that affiliate a portion of costs incurred from gas leak checks. *Id.*

The *MAC* decision impacted both the 1995 and 1993 rate cases filed by Minnegasco. In the 1995 rate case, the Commission granted Minnegasco's petition for reconsideration and ruled that good-will revenue could not be imputed to Minnegasco in setting the final rate. The Commission ordered the previously imputed revenue eliminated from the calculation of Minnegasco's revenue requirement in the 1995 rate case. However, the Commission affirmed the allocation of gas-leak-check costs to Minnegasco's affiliate because Minnegasco had agreed to the allocation as part of a settlement package in the 1995 rate case entered into while the issue of the Commission's authority was still being litigated.

In the 1993 rate case now before us, the court of appeals applied *MAC* and held that the Commission's decision to impute good-will revenue to Minnegasco must be reversed. *Minnegasco,* 556 N.W.2d at 610. However, the court concluded that the Commission also lacks statutory authority to "retroactively" alter rates to compensate Minnegasco for lost revenue occasioned by the 1993 rate case final order. The court looked to other statutory provisions regarding the Commission's authority to issue and amend its rate orders and held that the rule in *MAC* could only be applied by the Commission "prospectively" on remand. *Id.* at 610–11. Minnegasco petitioned for further review.

## II.

The Commission raises two preliminary issues for us to address before reaching the merits of Minnegasco's plea for a recoupment remedy.

■ First, the Commission suggests that this 1993 rate case is moot because Minnegasco chose to file a new rate case with the Commission in 1995 and new rate orders

have been issued. In fact, the Commission issued the interim rate order in the 1995 rate case eight months before this court issued *MAC*. The Commission notes that it was required by law to issue a superseding interim rate order within 60 days of Minnegasco's 1995 rate case filing. *See* Minn.Stat. § 216B.16, subd. 3.

█ Courts are designed to decide actual controversies. *See Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn. 1980); *Barnes v. Macken*, 252 Minn. 412, 415, 90 N.W.2d 222, 226 (1958); *Johnson v. Dosland*, 103 Minn. 147, 148–49, 114 N.W. 465, 466 (1908). Although exceptions exist, *see, e.g., Falgren v. State, Bd. of Teaching*, 545 N.W.2d 901, 903 (Minn.1996); *State v. Rud*, 359 N.W.2d 573, 576 (Minn.1984), the general rule is that when, pending appeal, an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal should be dismissed as moot. *In re Inspection of Minn. Auto Specialties, Inc.*, 346 N.W.2d 657, 658 (Minn.1984); *St. Paul City Ry. v. City of St. Paul*, 259 Minn. 129, 131–32, 106 N.W.2d 452, 454 (1960) (concluding that an appeal was moot because the rate increase allowed by the district court had not and would not ever be collected, and because two superseding rate orders, allowing rate increases, had since been issued); *State ex rel. Longman v. Kachelmacher*, 255 Minn. 255, 258, 96 N.W.2d 542, 545 (1959); *Mid–West Wine Co. v. Ericson*, 227 Minn. 24, 25, 34 N.W.2d 738, 738 (1948). The mootness doctrine, therefore, implies a comparison between the relief demanded and the circumstances of the case at the time of decision in order to determine whether there is a live controversy that can be resolved.

Minnegasco clearly retains a viable controversy with the Commission. *See Bebchick v. Public Utils. Comm'n*, 318 F.2d 187, 189–90 (D.C.Cir.), *cert. denied*, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963); *Connecticut Natural Gas Corp. v. Public Utils. Control Auth.*, 183 Conn. 128, 132–34, 439 A.2d 282, 285 (1981). This is not a case in which the party seeking relief has already obtained it, or the controversy is no longer of any practical significance. *E.g., Sprenger v. Jacobs*,

305 N.W.2d 747, 748 (Minn.1981). Here, there is a real and continuing controversy over Minnegasco's ability to recover lost revenue occasioned by the 1993 rate orders, regardless of whether they have been superseded. To say that the appeal is "moot" because the 1993 rate case orders have been extinguished is to say that the statutory scheme does not allow such a remedy. Hence, accepting the Commission's "mootness" argument requires resolution of the merits of Minnegasco's legal claim. *See Potomac Elec. Power Co. v. Public Serv. Comm'n*, 380 A.2d 126, 147–49 & n. 33 (D.C. 1977).

█ The Commission also contends that *MAC* does not apply to pending appeals under the exception to retroactivity outlined in *Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn. 1982) (applying the federal test articulated in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971)). *See Streich v. American Family Mut. Ins. Co.*, 358 N.W.2d 396, 398 (Minn. 1984). Whatever the merits of the Commission's argument, it has been waived. In essence, the Commission contends that the court of appeals erred by even considering *MAC*. The Commission did not, however, petition for further review of the lower court's decision, which held that the rate order should be reversed in light of *MAC*. *See Minnegasco*, 556 N.W.2d at 608, 610. Adopting the Commission's argument requires this court to reverse that holding; the Commission was therefore obligated to petition for further review if it disagreed that *MAC* governed this case. *See* Minn. R. Civ.App. P. 117; *Anderly v. City of Minneapolis*, 552 N.W.2d 236, 239–40 (Minn.1996); *Northwest Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 613 n. 1 (Minn.1995); *Hapka v. Paquin Farms*, 458 N.W.2d 683, 685–86 (Minn.1990); Hon. Peter S. Popovich & Erin Leigh Miller, *Obtaining Review in the Minnesota Supreme Court*, 14 Hamline L.Rev. 117, 129 (1990). We may therefore assume that the court of appeals properly reversed the Commission's 1993 rate case final order as exceeding the Commission's statutory authority.

### III.

◼ The central issue in this case is whether the applicable statutes authorize the Commission, on remand, to order a recoupment remedy to compensate a public utility for lost revenue occasioned by a rate order reversed on appeal as exceeding the Commission's statutory authority. Guided by the statutory language, our case law, and the need for a sensible and fair construction of the statutes, we hold that the Commission has implied statutory authority to order such a remedy.

Minnegasco seeks to recover revenue unlawfully denied by the Commission's 1993 rate case rate orders, which were in effect from February 1, 1994 (the effective date of the interim rates in the 1993 rate case) until October 10, 1995 (the effective date of the interim rates in the 1995 rate case). Minnegasco renews its argument before the court of appeals that, in view of *MAC,* the Commission's final rate order in this 1993 rate case should be reversed and the case remanded to the Commission with directions to authorize the company to recoup revenue losses due to the Commission's erroneous interpretation of its statutory authority. The Commission denies that its limited statutory authority includes such "retroactive" relief. Both parties assume that Minnegasco's right to obtain relief is controlled by and confined to the question of whether the Commission—rather than this court—has statutory authority to grant such relief; this approach is consistent with *Northwestern Bell Tel. Co. v. State,* 299 Minn. 1, 28–30, 216 N.W.2d 841, 858–59 (1974).

◼ As a creature of statute, the Commission enjoys only the authority granted to it by the legislature. *MAC,* 549 N.W.2d at 907; *Frost–Benco Elec. Ass'n v. Public Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984); *Great Northern Ry. v. Public Serv. Comm'n,* 284 Minn. 217, 220–21, 169 N.W.2d 732, 735 (1969). That authority may be either express or implied. "While express statutory authority need not be given a cramped reading, any enlargement of express powers by implication must be fairly drawn and fairly evident from the agency objectives and powers expressly given by the legislature." *Peo-*

*ples Natural Gas Co. v. Public Utils. Comm'n,* 369 N.W.2d 530, 534–36 (Minn. 1985) (holding that the Commission lacked express or implied authority to enforce its own orders by ordering a customer refund; noting that other enforcement tools were available in the statutes).

Minnesota Statutes section 216.27 governs Commission authority and procedure after a rate order is reversed by a reviewing court. It provides,

> If the order of the commission is reversed, upon filing a copy of the order of reversal with the commission, it shall proceed to determine the reasonableness of the rates, fares, charges, and classification on the merits.

*Id.* The language of section 216.27 contains no express grant of authority for the Commission to order revenue compensation for a utility when a superseded rate order is reversed on appeal; it simply says that the reasonableness of the rates are to be determined "on the merits." *Id.* The question is whether such authority should be inferred from the statutory scheme. *Cf. Peoples Natural Gas,* 369 N.W.2d at 534 ("[W]e must look at the necessity and logic of the situation."). For the reasons below, we conclude that this inference should be drawn.

Unlike other ratemaking provisions in the statutes that delineate Commission authority, section 216.27 does not clearly limit the force of Commission orders to solely prospective effect. For example, the rate change provisions state that when the Commission finds, after a rate hearing, that rates are unjust, unreasonable, or discriminatory, the Commission shall fix new rates by order, which "shall *thereafter* be observed until changed, as provided by [chapter 216B]." Minn.Stat. § 216B.16, subd. 5 (emphasis added). That section also explains that any rate design changes "shall be *prospective* from the effective date of the new rate schedules approved by the commission." *Id.* (emphasis added). And, after an investigation by the Commission and a finding that rates are unreasonable or unlawful, "the commission shall determine and by order fix reasonable rates * * * to be imposed, observed and followed *in the future* in lieu of those found to be

unreasonable or unlawful." *Id.* § 216B.23, subd. 1 · (emphasis added); *see also id.* § 216B.23, subd. 2 (regarding services and other practices). *Cf. id.* § 216B.25 (allowing the Commission to order any case reopened and to issue orders rescinding, altering, or amending any order ·fixing rates, and stating that such orders "shall have the *same effect* as an original order" (emphasis added)). Section 216.27 stands apart from these provisions.

■ Relevant case law also supports Minnegasco's argument for a recoupment remedy. Most importantly, we have found implied authority in the Commission's predecessor (the Public Service Commission) to order refunds on remand after a rate order is reversed. *See Northwestern Bell,* 299 Minn. at 28–30, 216 N.W.2d at 858–59. In that case, we concluded that a judicial decision reversing an order increasing rates should have more than "prospective effect," and ordered the Commission to allow a refund of the overcharges by crediting the accounts of current subscribers. *Id., citing Mountain States Tel. & Tel. Co. v. Public Utils. Comm'n,* 180 Colo. 74, 82–83, 502 P.2d 945, 949 (1972) (distinguishing between a reviewing *court* reversing a legally erroneous rate order and ordering that benefits be passed on to customers, and a ratemaking *agency* attempting to retroactively amend a prior rate order without statutory authority); *see also United Gas Improvement Co. v. Callery Properties, Inc.,* 382 U.S. 223, 227–30, 86 S.Ct. 360, 363–65, 15 L.Ed.2d 284 (1965); *Appeal of Granite State Elec. Co.,* 120 N.H. 536, 538–40, 421 A.2d 121, 122–23 (1980); Stefan H. Krieger, *The Ghost of Regulation Past: Current Applications of the Rule Against Retroactive Ratemaking in Public Utility Proceedings,* 1991 U. Ill. L.Rev. 983, 1025–26 (1991). "[A]mounts collected by a utility pending appeal enjoy no unique immunity from the claims of those to whom they rightfully belong." *Northwestern Bell,* 299 Minn. at 29–30, 216 N.W.2d at 858. If a refund power exists when a rate order is reversed as unlawfully excessive, a recoupment power is no less appropriate when a rate order is reversed as unlawfully deficient.

Granted, the appealed rate order in *Northwestern Bell* had not been superseded. The Commission raises the legitimate concern that allowing revenue recoupment in this case might be more disruptive to the ratemaking process than was the refund authority recognized in *Northwestern Bell. Cf. In re Petition of Inter–City Gas Corp.,* 389 N.W.2d 897, 901 (Minn.1986) (explaining that the interim rate procedure was intended to reduce fluctuations and the necessity for refunds, which were sometimes delayed); *In re Application of Peoples Natural Gas Co.,* 389 N.W.2d 903, 908–09 (Minn.1986) *("Peoples Natural Gas II ")*; *Peoples Natural Gas,* 369 N.W.2d at 535 (noting concern for stability in the ratemaking process). Nonetheless, *Northwestern Bell* supports Minnegasco's claim that the Commission retains implied remedial authority when a rate order is reversed on appeal. Our sense that a postreversal remedy was appropriate and fair in that case applies with like force in this case.

■ It is also true that chapter 216B generally does not provide for "retroactive ratemaking" by the Commission. *Peoples Natural Gas,* 369 N.W.2d at 533 (relying on Minn.Stat. §§ 216B.16, subd. 5, 216B.23, subd. 1 (1984), and Minn.Stat. § 216B.16, subd. 5, as amended). That is, the statutory scheme tends to allow only for rate orders that operate prospectively, rather than remedially. *See generally* Krieger, *supra,* at 997. But the statutory language of section 216.27 and chapter 216B does not support the rigid "rule" against retroactive ratemaking suggested by the Commission. In interpreting a statute that is neither entirely clear nor free from all ambiguity, our mission is to construe the statutory language consistent with the legislature's intent and in a sensible manner that avoids unreasonable, unjust, or absurd results. *See* Minn.Stat. §§ 645.16(1)-(4), (6), 645.17(1); *Thoresen v. Schmahl,* 222 Minn. 304, 311, 24 N.W.2d 273, 277 (1946). *Cf.* Minn.Stat. §§ 216B.03, 216B.16, subds. 5–6 (declaring that rates are to be just and reasonable). Nothing in *Peoples Natural Gas* prevents a reasonable and just interpretation in the face of statutory ambiguity. *See Peoples Natural Gas,* 369 N.W.2d at 534.

■ Any remaining doubt about the Commission's authority to order revenue recoupment in this case is resolved by considering the inequity of denying Minnegasco a remedy. As Minnegasco argues, more limited Commission authority after reversal would present public utilities—and perhaps their customers—with difficult choices between their rights to appeal and their rights to request rate changes from the Commission. *See* Minn.Stat. §§ 14.63–.69, 216.25, 216B.52 (outlining the procedure for appeals); *In re Petition of Northern States Power Co.,* 414 N.W.2d 383, 388 (Minn.1987) (noting that regulated public utilities are entitled to receive revenue sufficient to meet the cost of service and to earn a fair and reasonable return on their investment). Under the Commission's interpretation, a public utility that ultimately prevails in appealing a rate order as unlawful cannot recover revenue losses caused by the order if the utility has filed another rate case and—as required by law—new interim rates have been ordered. *See* Minn.Stat. § 216B.16, subd. 3. We are convinced that the current statutory language does not mandate this result and, absent a clearer statement from the legislature, we decline to construe the statute in this manner.

The Commission seems to acknowledge that such results could be inequitable, but it believes that the statutes create a way out of the dilemma. When an appeal is pending, section 216B.53 allows either the Commission or the court to stay or suspend the operation of "the order of the commission." By staying the order pending appeal, the Commission argues, the interim rate will remain in effect and rates can be adjusted "prospectively" if the final order is reversed.

This solution, however, is unsatisfying. The power to stay final rate orders is apparently within the discretion of the Commission, and the court's power to order a stay in cases like this seems limited. *Id.* ("[N]o commission order relating to rates or rules shall be stayed or suspended [by the reviewing court] absent a finding that great or irreparable damage would otherwise result to the party seeking the stay or suspension * * *."). The legislature did not provide for automatic stays on appeal, nor did the legislature clearly intend to condition an appellant's remedy on the decision of the *agency* to exercise its discretion and stay the challenged order. Furthermore, the Commission does not confront the effects of a subsequent, superseding rate case and rate order. Would a stay in an initial rate case preclude interim rates from being ordered in a new rate case? Can a court or the Commission somehow stay subsequent rate orders that are *not* on appeal?

Rather than speculate on the scope or alter the meaning of section 216B.53, the better course is to follow precedent, consider the structure of the applicable statutes as a whole, and recognize implied Commission authority in this case. Whatever rate instability results from this authority is outweighed, in our estimation, by the importance of a meaningful remedy when the Commission exceeds its statutory authority in ordering rates. Stabilizing unlawfully calculated rates is not a duty the statutes impose on the courts. For the same reasons, the existence of a superseding rate order is insufficient by itself to extinguish the Commission's authority to order a revenue recoupment remedy on remand after reversal.

■ It should be made clear, however, that in this case Minnegasco did not appeal the Commission's decision to allocate certain gas-leak-check costs to its affiliate. We decline Minnegasco's invitation to address issues not raised below. *See Thiele v. Stich,* 425 N.W.2d 580, 582–84 (Minn.1988).

On remand, the Commission has implied statutory authority to order a recoupment remedy to compensate Minnegasco for lost revenue occasioned by the Commission's unauthorized imputation of good-will revenue in the 1993 rate case. Minnegasco is entitled to such compensation, but we leave to the Commission the task of determining the amount owed Minnegasco and the appropriate manner of recovery. *See Northwestern Bell,* 299 Minn. at 30, 216 N.W.2d at 858–59.

Reversed and remanded.

GARDEBRING and BLATZ, JJ., took no part in the consideration or decision of this case.