**In the Matter of the Application of MIN-NEGASCO, a Division of NorAm Energy Corp., for Authority to Increase Its Natural Gas Rates in Minnesota.**

No. C2–97–8.

Court of Appeals of Minnesota.

July 29, 1997.

728

Samuel L. Hanson, Briggs and Morgan, Miggie E. Cramblit, Douges W. Peterson, Minneapolis, Paul T. Ruxin, Jones, Day, Reavis & Pogue, Chicago, IL, for Relator Minnegasco.

Hubert H. Humphrey, III, Attorney General, Margie E. Hendriksen, Assistant Attorney General, St. Paul, for Respondent Minnesota Public Utilities Commission.

Considered and decided by CRIPPEN, P.J., and HUSPENI and WILLIS, JJ.

## OPINION

HUSPENI, Judge.

Relator, a public utility, challenges that portion of respondent's order after reconsideration in which respondent declined to modify one element of a settlement of a rate case to give effect to a recent Minnesota Supreme Court decision. Because relator, at the time it entered into the settlement, reserved the right to have the supreme court decision applied, we reverse respondent's order; because respondent has authority to withdraw its approval of the amended settlement, we remand.

## FACTS

In relator Minnegasco's 1993 rate case, respondent Minnesota Public Utilities Commission (MPUC), ruled that the MPUC had authority, inter alia, to impute to Minnegasco goodwill revenue for the value of its name used by its affiliated businesses and to allocate part of the cost of gas leak checks to those affiliated businesses. Minnegasco challenged these portions of the order; this court affirmed them. *Minnegasco v. Minnesota Pub. Utils. Comm'n,* 529 N.W.2d 413 (Minn. App.1995) (*Minnegasco I*). The supreme court granted Minnegasco's petition for review.

Pending the supreme court's decision, Minnegasco filed its 1995 rate case, also imputing goodwill revenue from its affiliated businesses and allocating part of the cost of gas leak checks to them in accord with *Minnegasco I*. Minnegasco and the Minnesota Department of Public Services (the Department) entered into an offer of partial settlement of the 1995 rate case. The offer of partial settlement reserved some issues,

among them the goodwill revenue issue, as "Issues Not in Dispute," and included other issues, among them the gas leak check cost issue, in the settlement section. Following a hearing at which attorneys representing Minnegasco and the Department explained their positions to and answered questions from the commissioners, the MPUC approved the offer of partial settlement and issued an order imputing goodwill revenue from the affiliated businesses and allocating gas leak check costs to them.

Three days after the MPUC issued its order, the supreme court released *Minnegasco v. Minnesota Pub. Utils. Comm'n,* 549 N.W.2d 904 (Minn.1996) (*Minnegasco II*), reversing this court's decision and holding that the MPUC did not have authority either to impute goodwill revenue from affiliated businesses or to allocate part of the costs of gas leak checks to them. Minnegasco, in light of *Minnegasco II,* moved the MPUC to reconsider its order approving the offer of partial settlement of the 1995 rate case with regard both to the imputation of goodwill revenue and to the allocation of gas leak check costs. Following another hearing, the MPUC issued an order after reconsideration in which it eliminated the imputation of goodwill revenue pursuant to *Minnegasco II,* but declined to apply *Minnegasco II* in regard to the allocation of gas leak check costs. Minnegasco challenges that portion of the MPUC order.[1] The MPUC asserts that its order should be affirmed, but argues in the alternative that if *Minnegasco II* is held to mandate reversal of the allocation of gas leak check costs, the MPUC may withdraw its approval of the offer of partial settlement, and the case should be remanded on that basis.

## ISSUES

1. Did Minnegasco waive its right to have the supreme court decision applied to the offer of partial settlement?

---

1. Minnegasco had also challenged the imputation of goodwill revenue in the 1993 case in this court. That appeal was stayed pending the release of *Minnegasco II,* after which this court issued *In re Application of Minnegasco,* 556 N.W.2d 607 (Minn.App.1996), reversing the MPUC's imputation of goodwill revenue in the 1993 case, but holding that Minnegasco could not recover the rates it should have received because the MPUC lacked statutory authority "to

retroactively amend an order following remand by this court." *Id.* at 610. The supreme court granted review. *In re Application of Minnegasco,* 565 N.W.2d 706 (Minn.1997) reversed, holding that the MPUC has "implied statutory authority to order a recoupment remedy to compensate a utility for lost revenue occasioned by a rate order reversed on appeal as exceeding the Commission's statutory authority." *Id.* at 707.

2. Did the MPUC err in not applying the supreme court decision to the offer of partial settlement?

3. May the MPUC withdraw its approval of an amended offer of partial settlement?

## ANALYSIS

### 1. Waiver of Minnegasco's Right to Have Supreme Court Decision Applied to Gas Leak Check Cost Issue.

■■■ The MPUC stated in its order after reconsideration that "[Minnegasco] waived any possible future inclusion of these [gas leak check] costs in [its] revenue requirement, even if this issue were later revisited." In considering questions of law, reviewing courts need not defer to agency expertise. *St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn. 1989). "The question of waiver, the facts not being in dispute, may be decided as a matter of law." *Montgomery Ward & Co., Inc. v. County of Hennepin*, 450 N.W.2d 299, 304 (Minn.1990). "A waiver is a voluntary and intentional relinquishment * * * of a known right." *Id.* (citation omitted).

■ There is abundant evidence that throughout the 1995 rate case, Minnegasco reserved the right to reopen the gas leak check cost issue if the supreme court rendered a decision favorable to Minnegasco. In filing the 1995 rate case, Minnegasco stated that it had appealed the gas leak check issue to the supreme court and "reserve[d] the right to adjust test year operating expenses based on that Court's decision." The offer of proposed settlement drafted by Minnegasco and the Department stated that

> [Minnegasco] has appealed the Cost Allocation Case Order to the Minnesota Supreme Court and, if successful, proposes to include additional gas leak check costs in this case.

At the May 1996 hearing to obtain MPUC approval of the offer of partial settlement, counsel for Minnegasco explicitly told the MPUC that the settlement agreement did not reflect any intention of Minnegasco "to waive its rights, should it prevail in [the supreme] court, to have the court's decision applied." The MPUC points to no evidence refuting this or indicating that Minnegasco voluntarily or intentionally waived its right. We hold that Minnegasco did not waive the application of the pending *Minnegasco II* with regard to the gas leak check cost issue.

### 2. The MPUC's Refusal to Apply *Minnegasco II* [2]

Minn.Stat. § 14.69 (1996) provides that this court may affirm, reverse, or modify an agency decision if that decision is

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

In considering questions of law, reviewing courts need not defer to agency expertise. *St. Otto's Home*, 437 N.W.2d at 39–40.

■ The MPUC declined to give *Minnegasco II* retroactive effect by refusing to approve an amendment of the offer of partial settlement that would have deleted the allocation of gas leak check costs. "The general rule is that * * * the [dispositive] decision is to be given retroactive effect." *Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn.1982). *Hoff* also sets out a test for exceptions to this rule. *Id.* The MPUC held that applying *Minnegasco II* "falls squarely within the *Hoff* exceptions to retroactive application of new rulings." We disagree.[3]

2. We note that Minnegasco did not raise the issue of *Minnegasco II*'s application to the gas leak check cost issue to this court in the 1993 case and that the supreme court therefore "decline[d] Minnegasco's invitation" to address it on review. *In re Application of Minnegasco*, 565 N.W.2d at 713.

3. We note that the MPUC also argued the *Hoff* exceptions in regard to the goodwill issue in the

1993 rate case. The supreme court rejected the argument, holding that the MPUC had waived it by failing to seek review of the portion of this court's decision reversing the imputation of goodwill revenue. *In re Application of Minnegasco*, 565 N.W.2d at 710. "[T]he Commission was * * * obligated to petition for further review if it disagreed that [*Minnegasco II*] governed this case." *Id.*

■ *Hoff* set out three criteria that must all be met to avoid retroactive application:

> First, the decision to be applied nonretroactively must establish a new principle of law * * * by overruling clear past precedent on which litigants may have relied * * *. Second, it has been stressed that we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. * * * Finally, we have weighed the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Id.* (quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)) (citations and quotations omitted). We conclude that none of the three is met here.

In considering the first prong of the *Hoff* test, we are reluctant to conclude that *Minnegasco II* overturned existing law when it reversed *Minnegasco I. Minnegasco I* was not clear past precedent that was overruled by *Minnegasco II.* Instead, *Minnegasco I* reflected the decision made by the court of appeals (albeit a decision on which the parties relied) as the case journeyed to a final resolution by the supreme court in *Minnegasco II.* Only a strained interpretation of the phrase "clear past precedent" would enable *Minnegasco I* to qualify for inclusion in that category.

Even assuming that the first *Hoff* prong is met, the second and third prongs clearly are not. The second prong is whether retroactive application of the rule will retard its operation. Here, the rule of *Minnegasco II* is designed to prevent allocation of gas leak check costs to unregulated businesses. Applying *Minnegasco II* retroactively to the 1995 rate case will advance, not retard, that goal.

The third factor requires consideration of any inequity resulting from retroactive application. In *Hoff,* the court was aware of "the

harshness to Hoff of finding that [the dispositive decision] is to be applied retroactively," but noted that that decision involved "an even more unyielding factual situation" because it denied all relief to the plaintiff. *Id.* at 364. Here, retroactive application will result in ratepayers paying for gas leak check costs that the supreme court has said are legitimately theirs. There is no inequity in retroactive application of *Minnegasco II. See also In re Application of Minnegasco,* 565 N.W.2d at 710 (upholding the application of *Minnegasco II* to the imputation of goodwill revenue issue in the 1993 case). We hold that the MPUC erred as a matter of law in refusing to apply *Minnegasco II* retroactively.

### 3. The Integrity of the Settlement Agreement.

■ The MPUC argues that in the event this court decides that *Minnegasco II* is to apply retroactively, the matter should be remanded to the MPUC for further proceedings. Minnegasco, to the contrary, argues that there is no need for further proceedings in this case; that while a remand is appropriate, the scope of the remand should be very narrow, with the MPUC directed to permit recovery of the gas leak check costs. The discretion of the MPUC on remand, we believe, must be determined by the answer to the question: "Did the MPUC in May 1996 approve a settlement that unambiguously recognized that a supreme court opinion favorable to Minnegasco would result in a $1.5 million recovery for Minnegasco without modification of any other provision of that settlement?" We conclude that the answer to that question is "No." A review of the record indicates that the MPUC approved a settlement agreement in which the application of *Minnegasco II* remained open.

Minnegasco argued in the motion for reconsideration, and argues before this court, that the Department agreed that $1.5 million would be added to Minnegasco's revenue requirement if the supreme court ruled favorably to Minnegasco. Minnegasco and the Department may, in fact, have agreed on this. However, neither the text of the offer of partial settlement nor the transcript of the

hearing to obtain MPUC approval of the settlement indicates that the MPUC approved a package in which one item could be altered without affecting the others.

The allocation of gas leak check costs issue was part of the settlement section of the offer.

> The Settlement Section * * * is offered as the product of compromise. Settlements are encouraged under Minn.Stat. § 216B.16, subd. 1(a), which requires the Commission to consider and deal with them as a package. The statute recognizes that *a settlement is an integrated whole whose individual provisions are mutually dependent and may be linked in ways that are not immediately apparent.* The statute, therefore, gives any settling party the right to reject any modification the Commission makes to a settlement and to return to hearing.

(Emphasis added.) This language supports the MPUC's argument that it viewed the settlement section as a package and that any modification, however caused, would in effect nullify that package.

The transcript of the hearing leads to the same conclusion. While it is clear that Minnegasco did not waive its right to have the pending *Minnegasco II* applied to the offer of partial settlement, it is equally clear that the MPUC did not agree to approve a package that was subject to modification. Both Minnegasco and the Department acknowledged the MPUC's right to withdraw its approval if the package were altered.

Counsel for Minnegasco cited Minn.Stat. § 216B.25 (1996), pertaining to further action by the Commission on its orders, as explicitly giving the MPUC

> the authority to adjust rates and to review its prior and previous orders if they are unlawful or unreasonable. You [the MPUC] absolutely have the authority to go back and change an order if the law changes.
>
> *    *    *    *    *    *
>
> Should the law change afterwards and should you find that your present orders are now not consistent with the law, you

specifically have the authority to reopen and correct any such outstanding order. In response to a statement from counsel for the MPUC that "[Minnegasco] agreed on a number. That was part of a package[,]" counsel for Minnegasco replied, "Absolutely."

Counsel for the MPUC then asked counsel for the Department if the number agreed on would change as the result of a favorable supreme court holding on the gas leak check cost issue. The Department's counsel said that the issue had not been addressed, and added that

> [Minnegasco] believe[s] they would have a legal right to at least bring that claim; and we wouldn't view the settlement as keeping them from at least bringing that claim before the commission.

Counsel for the MPUC noted that she was "concerned about the fact that the parties had arrived at certain numbers and agreed to that as a package."

Finally, one commissioner asked counsel for the Department if he agreed with Minnegasco's counsel's reference to Minn.Stat. § 216B.25 as giving the commission "jurisdictional authority to open and to review and to alter any previous order[.]" Counsel for the Department replied, "I believe you heard his interpretation [of the statute] correctly, and I don't dispute his characterization of that."

The important question remains: What did the MPUC approve when it approved the settlement agreement in May 1996? We believe the MPUC approved a settlement on which no clear agreement was expressed regarding the $1.5 million at issue here.

The MPUC erred in refusing to apply *Minnegasco II* retroactively and on remand it must apply that decision. We conclude, however, that the MPUC must be permitted to retain the option of reopening the settlement agreement as it reconsiders the matter under *Minnegasco II.* As a result of our determination that *Minnegasco II* must be applied retroactively, the settlement agreement approved by the MPUC no longer exists.

> If, in the commission's judgment, after the rehearing, it shall appear that the original decision, order or determination is in any

respect unlawful or unreasonable, the commission may reverse, change, modify or suspend the original action accordingly.

Minn.Stat. § 216B.27, subd. 3 (1996).

## DECISION

*Minnegasco II* must be given effect with regard to the gas leak check costs, and giving it effect means that the settlement agreement approved as a totality by the MPUC no longer exists. Therefore, we reverse the MPUC holding that *Minnegasco II* not be given effect and remand for further proceedings in accord with this opinion.

**Reversed and remanded.**