Gregory PHILLIPS, Appellant,

v.

**STATE of Minnesota, et al., Respondents.**

No. A06–627.

Court of Appeals of Minnesota.

Jan. 16, 2007.

Judith K. Schermer, Judith K. Schermer PLLC, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Gary R. Cunningham, Assistant Attorney General, St. Paul, MN, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge; ROSS, Judge; and HUSPENI, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

ROSS, Judge.

Gregory Phillips, an instructor at a community college, challenges the college's decision not to rehire him following an investigation that substantiated a complaint that he sexually harassed a student. On appeal from summary judgment, Phillips argues that the district court erred by determining that Phillips did not have a protected property interest and the college did not infringe his liberty interest to violate his due process rights, and by not sanctioning the college for spoliation of evidence. Because Phillips had only a unilateral, subjective expectation of future employment at the college and the college did not publicize its reasons for not rehiring Phillips, we affirm the district court's conclusion that Phillips did not have a protected property interest and the college did not violate his liberty interest under the Due Process Clause. Because the spoliation claim is mooted by our due process analysis, we decline to address the issue.

## FACTS

Minneapolis Community and Technical College hired Gregory Phillips in January 2001 as a temporary, part-time English instructor. The state's collective-bargaining agreement, which governed Phillips's employment relationship with the college, provided that Phillips's employment was on a fixed-term basis and his employment concluded at the end of the appointed term. Each semester the college provided Phillips with a letter appointing him as an instructor for the following semester. His most recent appointment ended on December 19, 2003.

In early December 2003, the college received a written complaint from a student alleging that Phillips had sexually harassed her for several weeks. The student, who worked at the campus bookstore, claimed that Phillips continuously asked her out despite her repeated refusals, repeatedly visited or passed by the bookstore, stared at her while she was working, and repeatedly attempted to speak with her during her breaks, which she often spent outside. The college's director of legal affairs informed Phillips that a student had filed a sexual-harassment complaint against him and instructed him to stay away from the bookstore. The director, however, did not adhere to the college's policy and procedures for investigating sexual-harassment complaints. Specifically, she did not give Phillips written notice of the complaint or a copy of the college's policies and procedures for addressing harassment complaints, and she did not advise Phillips that he could provide a written response to the allegations.

As part of her investigation, the director interviewed the student, three witnesses, and Phillips. When she interviewed Phillips, she did not give him a written Tennessen notice as required by Minnesota Statutes section 13.04, subdivision 2. During the interviews, the director took notes, which she discarded after incorporating them into her formal report. Based on her investigation, the director concluded that Phillips violated the college's sexual-harassment policy, and she submitted her findings to the college's vice president of student and academic affairs. In a letter dated December 18, 2003, the vice president informed Phillips of the college's decision not to rehire him. Although Phillips had ordered course books and selected the courses he planned to teach the following semester, the college had not given him a letter of appointment for the Spring 2004 semester.

In January 2004, Phillips and his attorney each sent letters to the college's president. The letters contested the sexual-

harassment allegations and challenged the college's decision not to rehire Phillips, asserting that the college failed to follow its required procedures while investigating the sexual-harassment complaint. In response, the president provided Phillips with written notice of the complaint, a written notice that Phillips could respond to the allegations, a written Tennessen warning, and a one-page summary of the investigation. Phillips did not respond further, and in March 2004 the president affirmed the decision not to rehire Phillips, finding that sufficient evidence demonstrated that he had harassed the student.

In September 2004, Phillips filed a civil complaint in district court against the state, the college, the state college and university system and its board of trustees, and the college's president and vice president of student and academic affairs. The complaint alleged that the college racially discriminated against him and violated his due process rights. Phillips later claimed spoliation of evidence by the college based on the investigator's decision to discard her notes. The district court granted the defendants' motion for summary judgment. Phillips appeals, arguing that the district court erred by finding that he did not have a protected property or liberty interest that entitled him to due process. He further challenges the district court's conclusion that his spoliation claim lacked a legal and factual basis.

## ISSUES

I. Does a state employee working under a fixed-term contract have a property interest entitling the employee to due process when the employee is not rehired at the end of the appointed term?

II. When a government employer decides not to rehire an employee after an internal investigation substantiates a sexual-harassment complaint against the employee, but does not publish the reasons for the separation from employment, does the employee have a protected liberty interest entitling him to due process?

III. Does a party engage in spoliation of evidence when an investigator discards notes she produced in the course of the investigation after she incorporates them into her final report?

## ANALYSIS

■ Phillips challenges the district court's summary-judgment determination that he had neither a constitutionally protected property nor liberty interest. On appeal from summary judgment, we review whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Prior Lake Am. v. Mader,* 642 N.W.2d 729, 735 (Minn.2002). The material facts in this case are undisputed. We therefore review de novo the district court's legal conclusions. *Id.* Summary judgment is appropriate when a plaintiff cannot prove an essential element of his claim. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn. 1995).

■ The United States Constitution forbids a state to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To establish the existence of a procedural due process violation, a plaintiff must first show that he had a liberty or property interest and that state action deprived him of that protected interest. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (holding that procedural due process constrains only government decisions depriving individuals of interests protected under Due Process Clauses of federal constitution). Without a protected interest, the government has no constitutional obligation to provide due process. *Singleton v. Cecil,* 155 F.3d 983,

987 (8th Cir.1998). A university's failure to follow its procedural rules and regulations does not, by itself, give rise to a protected property or liberty interest. *Batra v. Bd. of Regents*, 79 F.3d 717, 720 (8th Cir.1996).

**I**

■ We first consider Phillips's asserted property interest in continued employment after December 2003. To have a property interest, a government employee must have a legitimate claim of entitlement to continued employment; a unilateral expectancy is insufficient. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are protected by, but not created by, the Constitution. *Id.* A property interest stems from an independent source, such as a statute or contract "that secure[s] certain benefits and that support[s] claims of entitlement to those benefits." *Id.; see also Washington v. Indep. Sch. Dist. No. 625*, 590 N.W.2d 655, 659 (Minn. App.1999) (noting that subjective expectation of continued employment is not protected by procedural due process). In many settings, a public employee has a constitutionally protected property interest in continued employment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (holding that security guard hired by board of education had property interest in continued employment when state statute provided that civil servants could be terminated only for cause). An untenured teacher at a public school, however, has no constitutional right to due process after his contractual term of employment expires and the school decides not to rehire him. *See Roth*, 408 U.S. at 569, 92 S.Ct. at 2705 (holding that untenured professor at state university had no right to procedural due process on university's decision not to rehire him after his

term expired); *Geddes v. Northwest Mo. State Univ.*, 49 F.3d 426, 429 (8th Cir.1995) ("Absent unusual circumstances, a teacher in a position without tenure or a formal contract does not have a legitimate entitlement to continued employment.").

■ Because Phillips does not point to any statute that gives rise to a property interest, any property interest in employment must arise from the terms of his appointment. We agree with the district court that the terms of Phillips's employment did not provide him a protected property interest entitling him to due process. Phillips's employment at the college was part-time and temporary. Under the terms of the collective-bargaining agreement, his employment relationship with the college ended for each appointment period at the end of the semester. Phillips acknowledged in an affidavit that, before each semester began, the college provided him with notice of his official appointment for the coming semester. It is undisputed that his last appointment ended December 19, 2003. And Phillips does not contest the district court's finding that the college did not give him an official appointment letter for the spring semester. Instead, the college gave him notice of its decision not to rehire him. The terms of Phillips's appointment did not provide for renewal and gave him no property interest in reemployment for the coming semester. The college did not discharge Phillips; it simply did not rehire him.

■ Phillips has not demonstrated that he had a legitimate expectation of continued employment. Although he claims a property interest existed because he selected courses from the college catalogue that he would teach in the spring and ordered course books, as he had for prior semesters, he took these actions based on his own expectation of continued employ-

ment, not on the college's direction. And a unilateral expectation in continued employment cannot create a protected property interest. *See Geddes,* 49 F.3d at 429–30 (holding that untenured professor with annual contract expressly limiting employment to one academic year had only unilateral expectation of continued employment despite university president's promise of lifetime employment). The district court properly held that Phillips did not have a constitutionally protected property interest entitling him to due process.

## II

We turn next to Phillips's assertion that the college violated his due process rights because he had a liberty interest in continued employment. A person's liberty interest in continued employment may be implicated when his "good name, reputation, honor, or integrity is at stake" because of government action that "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. If the reasons for the separation from employment are not made public, they cannot form the basis for a claimed liberty-interest violation based on impairment of the employee's good name or reputation. *Bishop v. Wood,* 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976); *see also McIntire v. State,* 458 N.W.2d 714, 719 (Minn.App.1990) (observing that *Bishop* amplified Supreme Court's holding in *Roth* ), *review denied* (Minn. Sept. 28, 1990). To demonstrate a violation of a liberty interest, an employee must therefore show that the reasons for the separation from employment were stigmatizing and that the employer made these reasons public. *Allen v. City of Pocahontas,* 340 F.3d 551, 556 (8th Cir.2003).

Phillips claims that an allegation of sexual harassment in the teaching profession is stigmatizing, and he details his troubles in finding subsequent employment. He notes that he did not receive an interview when he applied for a tenured position with the college in early 2004, and that, with the exception of a one-semester teaching position in Louisiana, he has been unable to obtain employment despite making numerous applications. But Phillips fails to allege an essential element of his claim, that the college publicized its reasons for not rehiring him. Nonrenewal of a contract without publication cannot alone support a claimed liberty-interest violation. *See Buhr v. Buffalo Pub. Sch. Dist. No. 38,* 509 F.2d 1196, 1199 (8th Cir.1974) (holding that school did not violate teacher's liberty interest when school did not renew teacher's contract and did not publish reasons for nonrenewal or otherwise incorporate reasons into document available to prospective employers). The district court found that the college did not make public either the letter informing Phillips of the college's decision not to rehire him or the investigator's report substantiating the sexual-harassment allegation. The record supports this finding.

But Phillips suggests that publication occurred nonetheless, because of the college's decision. In his affidavit, Phillips noted that some of his colleagues at the college asked about his sudden departure and that he explained to them "what the college had charged [him with] and why they let [him] go." Phillips, not the college, disseminated the details of the college's decision not to rehire him. Phillips therefore appears to rely on what amounts to a claim of compelled self-publication. We must therefore decide whether his alleged compelled self-publication creates due process liability for the college by stigmatizing Phillips and impairing his em-

ployment opportunities. We hold that it does not.

■■■ "Compelled self-publication" is a self-defined concept; it is an exception to the publication requirement for certain causes of action in which publication by the defendant is an essential element of the plaintiff's case. The exception rests on the idea that a plaintiff might be compelled to disclose the information to others in some circumstances, such as, for example, when she is applying for a position with another potential employer who requires the disclosure. *See generally* David A. Elder, *Defamation: A Lawyer's Guide* § 1:25 (2006).

■■■ Minnesota has recognized the doctrine of compelled self-publication, but only as it relates to defamation actions. *See Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 888 (Minn.1986) (recognizing that doctrine applies in defamation action following separation of employment and person making defamatory statement knows that "the defamed person has no reasonable means of avoiding publication of the statement"); *Keuchle v. Life's Companion P.C.A., Inc.,* 653 N.W.2d 214, 219 (Minn.App.2002) (applying doctrine of compelled self-publication in defamation context), *review dismissed* (Minn. Jan. 21, 2003). We appreciate that federal courts are divided regarding whether self-publication might modify the requirement of dissemination by a public employer in a due process analysis. *See Olivieri v. Rodriguez,* 122 F.3d 406, 408 (7th Cir.1997) (discussing split in federal courts of appeals on application of self-publication to due process analysis), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998). But we hold that, in Minnesota, the doctrine of compelled self-publication as it relates to separation from employment is limited to defamation actions and does not support a claim alleging violation of a lib-

erty interest. *See id.* at 408–09 (observing that doctrine of compelled self-publication "is inconsistent with the fundamental principle of mitigation of damages" because likelihood of self-publication is speculative and applying doctrine in due process context would encourage plaintiffs to unnecessarily publish to increase damages); *McIntire,* 458 N.W.2d at 719 (finding no liberty-interest violation when public employer did not disseminate reasons for discharging employee). Because Phillips failed to prove an essential element of his due process claim, the district court properly ordered summary judgment in favor of the defendants.

■■■ In addition to his procedural due process theory, Phillips suggests in an undeveloped argument that the college also violated his substantive due process rights. To prove a substantive due process violation, a public teacher must demonstrate that his employer either acted arbitrarily in dismissing him, or that the dismissal substantially departed from accepted academic norms in a manner that demonstrates that the person responsible for the dismissal did not exercise professional judgment. *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985); *Chronopoulos v. Univ. of Minn.,* 520 N.W.2d 437, 445 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994). The Eighth Circuit Court of Appeals has clarified that this level of arbitrariness is one that is so beyond reason that it shocks the conscience. *Herts v. Smith,* 345 F.3d 581, 587–88 (8th Cir.2003) (rejecting claim by employee that employer violated substantive due process rights because failure to renew did not "rise to the level of conscience-shocking"). Our supreme court has adopted that same standard in a nonemployment setting, explaining that "[a] cognizable claim of a Fourteenth Amend-

ment substantive due process violation must describe governmental conduct so egregious that it shocks the conscience." *Mumm v. Mornson* 708 N.W.2d 475, 487 (Minn.2006). Phillips has not identified any facts to persuade us that the college violated his substantive due process rights. The college reasonably chose not to rehire Phillips and extend his employment beyond his appointed term after investigating a sexual-harassment complaint against him. Nothing· in that decision or in the imperfections in the investigative process rises to the level of a conscience-shocking concern.

## III

Finally, Phillips asserts that the district court erred by not sanctioning the college for the investigator's destruction of her notes after she incorporated them into her report. The district court noted that Phillips's claim had no apparent legal or factual basis, and, regardless, was likely moot. Because we hold that the district court properly entered summary judgment for the college, the spoliation issue is moot and we need not reach its merits.

## DECISION

We affirm the district court's entry of summary judgment. Because the college employed Phillips on a fixed-term basis and he had not been offered employment beyond his appointed term, he did not have a constitutionally protected property interest in employment after his term expired. Because the college did not publish the reasons for its decision not to rehire Phillips, and the doctrine of compelled self-publication does not apply to a due process liberty-interest claim, Phillips cannot establish that the college violated a liberty interest.

**Affirmed.**