**CITIZENS FOR RULE OF LAW, et al., Appellants,**

v.

**SENATE COMMITTEE ON RULES & ADMINISTRATION, et al., Respondents.**

**No. A08–1343.**

Court of Appeals of Minnesota.

July 28, 2009.

Erick G. Kaardal, Mohrman & Kaardal, P.A.; Daniel J. Biersdorf, Biersdorf & Associates, Minneapolis, MN, for appellants.

Lori Swanson, Attorney General, Kenneth E. Raschke, Jr., Nathan J. Hartshorn, Assistant Attorneys General, St. Paul, MN, for respondents.

Considered and decided by KALITOWSKI, Presiding Judge; KLAPHAKE, Judge; and HUDSON, Judge.

## OPINION

KLAPHAKE, Judge.

Appellants challenge a district court order dismissing their constitutional challenge to increases in legislative per diem allowances. Because we conclude that the per diem increases did not violate the Minnesota Constitution, we affirm.

## FACTS

In 2007, committees in both houses of the Minnesota Legislature approved an increase to the maximum per diem allowance for their members' living expenses, the senate from $66 to $96, and the house from $66 to $77. The increases were effective immediately.

In February 2008, appellants, state taxpayers, legislators, and an association advocating their views about the law, commenced this action challenging the per diem increases. The complaint primarily asserts that the per diem increases violate Article IV, Section 9 of the Minnesota Constitution, which provides that "[t]he compensation of senators and representatives shall be prescribed by law. No increase of compensation shall take effect during the period for which the members of the existing house of representatives may have been elected." In addition to declaratory and injunctive relief, appellants sought orders enjoining "overcompensated" legislators from running for reelection if they fail to make restitution to the state before their next election.

Respondents, the State of Minnesota and legislative committees and offices, moved to dismiss the complaint on grounds

including lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, citing unpublished district court and Minnesota Supreme Court decisions in a case involving a challenge to a previous increase to the per diem rates. *See McDonald v. Minn. State House of Representatives,* No. 48005 (Minn. Nov. 22, 1977) (order) (*McDonald II*); *McDonald v. Minn. State House of Representatives,* No. 419863 (Minn. Dist. Ct. June 30, 1977) (*McDonald I*). The district court granted the motion, and this appeal follows.

## ISSUES

I.   Did the district court have subject-matter jurisdiction over appellants' claims?

II.   Are appellants' claims justiciable?

III.   Does an immediate increase to the legislative per diem rate violate the Minnesota Constitution?

## ANALYSIS

We review a dismissal under Minn. R. Civ. P. 12 de novo to determine whether the complaint sets forth a legally sufficient claim for relief. *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn. 2003). The existence of subject-matter jurisdiction raises a question of law subject to de novo review. *Grundtner v. Univ. of Minn.,* 730 N.W.2d 323, 332 (Minn.App. 2007). We also review de novo interpretation and application of the Minnesota Constitution. *Olson v. Synergistic Techs. Bus. Sys., Inc.,* 628 N.W.2d 142, 148 (Minn. 2001).

This is not the first time that Minnesota courts have addressed a constitutional challenge to an increase in legislative per diem payments. In *McDonald I,* a district court concluded that legislative per diem payments were not compensation within the meaning of—and thus did not violate—Article IV, Section 9, of the Minnesota

Constitution. *McDonald I,* No. 419863, slip op. at 4. The district court did so after specifically concluding that it was appropriate to exercise jurisdiction to hear the plaintiffs' constitutional claim. *Id.* slip op. at 5. The court noted separation-of-powers concerns, but concluded that the "direct claim of violation of the constitution" supported the exercise of jurisdiction. *Id.*

In an unpublished order, the Minnesota Supreme Court summarily affirmed the district court's order "in all respects." *McDonald II,* No. 48005, slip op. at 1. Appended to the order, the supreme court included a memorandum stating, in its entirety:

> This court adheres to the broad principles respecting the division of powers among the three branches of government, namely the executive, legislative and judicial. Implementation of this principle is achieved by this court's decision to refrain from an intrusion into the internal management of the legislative or executive branches absent a showing of circumstances compelling our review of discretionary actions taken. Appellants have not made the requisite showing that such an intrusion is justified.

*Id.* at 1–2.

The district court in this case relied on the decisions in *McDonald* when it dismissed appellants' claims, but the basis for the district court's decision is not entirely clear. Some of the district court's language suggests a conclusion that the court lacked subject-matter jurisdiction or should refrain from exercising jurisdiction to adjudicate appellants' claims. For instance, the court cited the language of the supreme court memorandum and concluded that appellants had "not made the requisite showing that trial court intrusion into the internal, discretionary decisions of

the Legislative branch ... is justified." And the district court did not order entry of judgment, which is consistent with a dismissal for lack of subject-matter jurisdiction. *See Bulau v. Bulau*, 208 Minn. 529, 531, 294 N.W. 845, 847 (1940) (noting that a judgment of dismissal is the usual prerequisite for appellate review, but that appeal from the order is allowed, when "gist of the dismissal is want of jurisdiction"). *But see City of Shorewood v. Metro. Waste Control Comm'n*, 533 N.W.2d 402, 404 (Minn.1995) (allowing appeal from order or judgment when court directs that judgment be entered on dismissal for lack of jurisdiction). Other language, however, suggests the district court's conclusion that appellants' claims failed on the merits. Indeed, the district court specifically concluded that "[t]he ruling that per diem payments, even when increased significantly, are not increased compensation remains the law in the State of Minnesota."

The parties have characterized the district court's order as a dismissal for lack of subject-matter jurisdiction, and we accepted appellate jurisdiction on that basis. Respondents assert that the scope of our review is thus limited to that issue. We disagree. Because the district court did not order entry of judgment, the dismissal order is alternatively appealable under Minn. R. Civ.App. P. 103.03(e), which permits appeal from an order "which, in effect, determines the action and prevents a judgment from which an appeal might be taken." Moreover, the constitutional issue has been fully briefed to this court. Accordingly, in the interests of justice and judicial economy, we will review that issue in addition to the jurisdictional issue. *See* Minn. R. Civ.App. P. 103.04 (providing that scope of review extends to "any other matter as the interest of justice may require"); *In re Civil Commitment of Martin*, 661 N.W.2d 632, 640 n. 3 (Minn.App.2003) (reviewing in the interests of justice constitu-

tional issue not reached by the district court but briefed and argued on appeal), *review denied* (Minn. Aug. 5, 2003).

## I.

■ This case does not involve subject-matter jurisdiction in the strictest sense. Subject-matter jurisdiction is best understood as the power of a court to hear particular classes of cases. *Black's Law Dictionary* 857 (7th ed. 1999); *see also Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 915, 157 L.Ed.2d 867 (2004) (identifying subject-matter jurisdiction as "the classes of cases ... falling within a court's adjudicatory authority"). Under this definition, Minnesota district courts have subject-matter jurisdiction over most civil and criminal cases, with some exceptions. Minn. Const. art. VI, § 3 (designating original jurisdiction in the district courts); *see also Irwin v. Goodno*, 686 N.W.2d 878, 880 (Minn.App.2004) (observing that Minnesota "[d]istrict courts are courts of general jurisdiction and have the power to hear all types of civil cases, with a few exceptions"). Here, we are confronted not with a dispute over the district court's power to hear a particular class of cases, but rather an argument that the court should have declined jurisdiction over this particular matter under the separation-of-powers doctrine.

■ Under the separation-of-powers doctrine, each branch of government is prohibited from intruding upon another branch's unique constitutional functions. *State v. T.M.B.*, 590 N.W.2d 809, 812 (Minn.App.1999), *review denied* (Minn. June 16, 1999). The doctrine has given rise to a number of prudential limits to the courts' exercise of subject-matter jurisdiction. *See, e.g., Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (explaining that standing, moot-

ness, ripeness, and political question doctrines all arise from separation-of-powers principles); *Dokmo v. Indep. Sch. Dist. No. 11,* 459 N.W.2d 671, 674 (Minn.1990) ("Constitutional principles of separate governmental powers require that the judiciary refrain from a de novo review of administrative decisions.").

The distinction between the *existence* of subject-matter jurisdiction and the determination whether to *exercise* that jurisdiction is not always clear, and Minnesota courts have sometimes characterized separation-of-powers issues as jurisdictional. *See, e.g., Dokmo,* 459 N.W.2d at 673 (explaining that "[c]omplete jurisdiction" could not be conferred upon courts to review school board decisions because of separation-of-powers principles). As we noted above, it is not clear whether the district court concluded that jurisdiction was lacking or that it should not be exercised. We conclude, however, that there is subject-matter jurisdiction over appellants' claims and that the separation-of-powers doctrine does not preclude the exercise of that jurisdiction.

▮ More specifically, we conclude that the district court erred to the extent that it interpreted the *McDonald* decisions to preclude consideration of a constitutional challenge to the legislative per diem. The "[a]uthority to determine the constitutionality of laws resides in the judiciary." *Minn. State Bd. of Health by Lawson v. City of Brainerd,* 308 Minn. 24, 40 n. 5, 241 N.W.2d 624, 633 n. 5 (1976). Thus, the supreme court's unpublished order opinion in *McDonald II* is best understood to affirm the district court's conclusion that

there had been no constitutional violation, and to express the supreme court's unwillingness to interfere *in the absence* of such a violation. *Cf. State ex rel. Sviggum v. Hanson,* 732 N.W.2d 312, 321 (Minn.App. 2007) (explaining that "judiciary must act prudentially to abstain from encroaching on the power of a coequal branch"). Such a construction is consistent with the supreme court's order affirming the district court's order "in all respects." Accordingly, we conclude that the district court erred in construing *McDonald II* to require dismissal of appellants' claims on jurisdictional grounds.

## II.

Respondents separately assert that this case is not justiciable because (1) appellants lack standing to challenge the per diem payments, and (2) appellants' claims are moot. We address these arguments in turn.[1]

▮ Standing "focuses on whether the plaintiff is the proper party to bring a particular lawsuit." *Olson v. State,* 742 N.W.2d 681, 684 (Minn.App.2007). "To establish standing, a party must have a sufficient personal stake in a justiciable controversy." *Id.* "A sufficient stake may exist if the party has suffered an 'injury-in-fact' or if the legislature has conferred standing by statute." *Id.* (quoting *State by Humphrey v. Philip Morris Inc.,* 551 N.W.2d 490, 493 (Minn.1996)).

▮ Taxpayers generally lack standing to challenge government action absent damage or injury "which is special or peculiar and different from damage or injury sustained by the general public." *Olson,*

---

1. Respondents also assert that they are not proper defendants to appellants' claims and that several of them do not have the capacity to be sued. Because the district court did not rule on this issue, we decline to reach it on appeal. *See Wood v. Diamonds Sports Bar &*

*Grill, Inc.,* 654 N.W.2d 704, 709 (Minn.App. 2002) (citing *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (declining to reach issue raised to but not addressed by the district court)).

742 N.W.2d at 684. However, taxpayers do have standing to bring an action challenging the " 'unlawful disbursements of public money ... [or] illegal action on the part of public officials.' " *Id.* (quoting *McKee v. Likins,* 261 N.W.2d 566, 571 (Minn.1977)).

In the leading taxpayer standing case, the Minnesota Supreme Court held that a taxpayer had standing to challenge "expenditure of tax monies under a rule which the plaintiff taxpayer alleges was adopted by a state official without compliance with the statutory rule-making procedures." *McKee,* 261 N.W.2d at 570. The court explained that

> while the activities of governmental agencies engaged in public service ought not to be hindered merely because a citizen does not agree with the policy or discretion of those charged with the responsibility of executing the law, the right of a taxpayer to maintain an action in the courts to restrain the unlawful use of public funds cannot be denied.

*Id.* at 571.

The Minnesota courts have limited *McKee* closely to its facts. *See Conant v. Robins, Kaplan, Miller & Ciresi, L.L.P.,* 603 N.W.2d 143, 147 (Minn.App.1999) (holding that taxpayer standing does not arise when funding challenged does not derive directly from taxes), *review denied* (Minn. Dec. 21, 1999); *Rukavina v. Pawlenty,* 684 N.W.2d 525, 531 (Minn.App. 2004) (holding that return of money to the general fund from a special allotment did not support taxpayer standing), *review denied* (Minn. Oct. 19, 2004).

█ We conclude that this action falls within the narrow confines of taxpayer standing. As in *McKee,* appellants challenge a specific disbursement of money, alleging that it was wrongful. *See Phillips v. Brandt,* 231 Minn. 423, 429, 43 N.W.2d 285, 289 (1950) (holding that taxpayer had

standing to challenge allegedly illegal payment of salary for city position because taxes were source of funds). We further conclude that appellant Citizens for Rule of Law has associational standing. *See, e.g., Philip Morris Inc.,* 551 N.W.2d at 497–98 (reaffirming "the well-established notion of 'associational standing,' which recognizes that an organization may sue to redress injuries to itself or injuries to its members").

█ Even if appellants have standing to sue, respondents also claim that the issue of their per diem payments is moot. Under the mootness doctrine, the "general rule is that when, pending appeal, an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal should be dismissed as moot." *In re Application of Minnegasco,* 565 N.W.2d 706, 710 (Minn.1997). It "is a flexible discretionary doctrine, not a mechanical rule that is invoked automatically." *Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 439 (Minn.2002) (quotation omitted). Thus, the doctrine requires "a comparison between the relief demanded and the circumstances of the case at the time of decision in order to determine whether there is a live controversy that can be resolved." *Minnegasco,* 565 N.W.2d at 710.

█ Some of the relief sought by appellants can no longer be granted. For instance, the court cannot enjoin state representatives from running in the 2008 elections because those elections have already taken place. But appellants also seek other types of declaratory and equitable relief that could still be granted. Thus, appellants' claims are not moot. *See Szarzynski v. Szarzynski,* 732 N.W.2d 285, 291 (Minn.App.2007) (concluding that matter was not moot when some of requested relief could still be granted).

Furthermore, an exception to the mootness doctrine is available for issues that are "functionally justiciable" and of "public importance and statewide significance" so that they should be decided immediately. *Jasper,* 642 N.W.2d at 439. "A case is functionally justiciable if the record contains the raw material (including effective presentation of both sides of the issues raised) traditionally associated with effective judicial decision making." *Id.* (internal quotation omitted). Thus, even if appellants' claims were moot, we would conclude that they meet the requirements for application of this exception to the mootness doctrine.

### III.

Although we are not precluded from reviewing the constitutionality of legislative action, separation-of-powers concerns influence the nature of that review. We begin with the premise that the legislature is presumed to act in a manner consistent with the constitution. *See In re Haggerty,* 448 N.W.2d 363, 364 (Minn. 1989) ("Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional [is] exercised with extreme caution and only when absolutely necessary."). Further, the party challenging the enactment has the burden to show that the constitution has been violated. *Id.* Finally, we are mindful that our constitution is a limit to—not a grant of—legislative power. *Williams v. Evans,* 139 Minn. 32, 38–39, 165 N.W. 495, 496 (1917). "We do not look to the Constitution to find the legislative power of a state. The state Legislature possesses all legislative power not withheld or forbidden by the terms of the state or federal Constitution." *Id.* at 37–38, 165 N.W. at 495. With these foundational principles laid, we turn to the merits of appellants' constitutional argument.

Article IV, Section 9 of the Minnesota Constitution, provides that "[t]he compensation of senators and representatives shall be prescribed by law. No increase of compensation shall take effect during the period for which the members of the existing house of representatives may have been elected." Each of appellants' constitutional and statutory claims is based upon its assertion that the per diem made available to Minnesota legislators violates this provision because it is not prescribed by law and because increases have taken effect during the current terms of legislators. The viability of these assertions depends upon a determination that the per diem is "compensation" within the meaning of the provision.

The district court in *McDonald I* concluded that per diem payments were not compensation and thus that per diem increases did not violate article IV, section 9. This conclusion is consistent with the plain meaning of the term compensation: "[r]emuneration and other benefits received in return for services rendered." *Black's Law Dictionary* 277 (7th ed. 1999); *cf. id.* 1157 (defining per diem as daily allowance, usually to cover expenses). Given the brevity of the supreme court's order in *McDonald II,* we do not have the benefit of the supreme court's analysis on the constitutional issue. But we reject the assertion that the supreme court did not reach this issue merely because the court did not address it in the memorandum appended to the order. Again, we rely on the supreme court's express affirmance of the district court "in all respects" and the well-established role of the courts in determining what the constitution requires. And we conclude, as did the district court, that per diem payments, even when increased significantly, do not constitute increased compensation.

Appellants assert that the constitutionality of the increased per diem rates cannot

be determined in a rule 12 posture, and that they are entitled to discovery to uncover the relationship between actual, unreimbursed expenses incurred by individual legislators and the per diem claimed. We conclude that no such inquiry is required. Rather, we agree with courts from other jurisdictions that judicial intervention should be limited to cases in which "the conclusion [is] inevitable without the aid of extrinsic facts and circumstances that the real intent and purpose of the appropriation ... was to increase the compensation ... of the [legislators]." *Scroggie v. Bates,* 213 S.C. 141, 48 S.E.2d 634, 640 (1948); *see also Manning v. Sims,* 308 Ky. 587, 213 S.W.2d 577, 582 (Ct.App.1948) ("The scope of judicial examination in the action of the Legislature in making a lump sum appropriation in lieu of actual expenses incurred is—and should be—rather narrow."). This is not such a case.

## DECISION

Because the per diem increase in this case was not an increase to compensation within the meaning of Article IV, Section 9 of the Minnesota Constitution, we affirm.

**Affirmed.**