Corey **CHRISTOPHER**, Relator,

v.

**WINDOM AREA SCHOOL BOARD**, Respondent.

No. A09–1715.

Court of Appeals of Minnesota.

April 27, 2010.

Philip G. Villaume, Villaume and Schiek, P.A., Bloomington, MN, for relator.

Kevin J. Rupp, Minneapolis, MN, for respondent.

Considered and decided by
SHUMAKER, Presiding Judge;
KLAPHAKE, Judge; and CRIPPEN,
Judge.*

## OPINION

KLAPHAKE, Judge.

This appeal involves a challenge to a school board's decision not to renew an annual basketball coaching contract of a high school teacher. We affirm.

## FACTS

During the 2008–09 school year, relator Corey Christopher was a part-time English teacher, activities director, and boys varsity basketball coach at the Windom Area School (Windom). As a teacher, relator taught one English class and supervised one study hall. Relator's teaching position was subject to a continuing contract, but his other assignments were subject to a one-year contract for which he received separate compensation.

On May 6, 2009, Windom school superintendent Wayne Wormstadt sent a letter to respondent Windom Area School Board (the school board), recommending that the school board not renew relator's contract as head boys basketball coach for the 2009–10 school year. The reasons given for Wormstadt's recommendation were:

1. Lack of a clear, organized, and linear boys basketball program for grades 7–12.

2. Failure to communicate in a clear and effective manner in his role as the head coach.

3. Mr. Christopher will be assigned grades 9 and 10 English for the 2009–10 school year. He will be returning to the classroom as a full-time teacher for the first time in seven years. Mr. Hanson [the school principal] and I both believe it is with utmost importance that Mr. Christopher gives his full efforts to the classroom above coaching. He will be the only teacher for these two grade levels. With the current state mandated testing in these grades and the fact that all students will pass through his classroom, we feel it is vital that all of Mr. Christopher's efforts are focused on the primary purpose of teaching English.

The school board approved the decision not to renew relator as head boys basketball coach at a regular meeting on May 11, 2009, and sent relator a letter informing him of that decision the next day.

Relator sought legal counsel, and on May 20, 2009, relator's counsel wrote a letter to counsel for the school board, requesting the reasons for the decision and asking for a hearing before a neutral hearing officer. On May 27, 2009, Wormstadt sent a letter to relator informing him of the reasons for the decision in language

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

that was identical to that set forth in Wormstadt's May 6 letter to the school board.

On May 28, 2009, the school board counsel sent relator's counsel a letter denying relator's request for a hearing before a neutral hearing officer, stating that it was not required either by statute or under state or federal due process law. Nevertheless, on June 1, 2009, Wormstadt sent relator a letter informing him that he would be given the opportunity to appear at a school board meeting to respond to the reasons given for his non-renewal and that the meeting would be either open or closed, at relator's option. Relator then sought to subpoena witnesses, call Wormstadt as a witness, and cross-examine school board members, but those requests were denied on the basis that the purpose of the meeting was merely to allow relator to respond to the school board's given reasons for the non-renewal decision and not to conduct a contested-case hearing.

The school board meeting was held on August 4, 2009. Relator called sixteen witnesses to speak on his behalf, including a former principal, a clergy person, and individuals involved in Windom basketball, such as fellow coaches, parents, referees, staff, and a student. Nearly all spoke with regard to relator's coaching ability; nearly all made comments extremely favorable to relator; and many directly contradicted the first two given reasons for the school board's non-renewal decision and questioned the unexpected and summary nature of the decision. Two persons spoke with regard to relator's teaching ability, and both, a former principal and a paraprofessional who assisted in relator's classroom for seven years, gave favorable observations about his teaching ability.

Superintendent Wormstadt also spoke at the meeting and elaborated on the original reasons he gave for recommending that relator's coaching assignment not be renewed. He talked about relator's deficiencies in basketball program development in the grades leading up to high school, his failure to communicate with the lower grades, and his yelling and swearing at an assistant coach in one instance.

Wormstadt also stated that relator was needed as a full-time English teacher and would be responsible for teaching 120–130 students beginning the following year, that teaching needed to be his priority, and that he had been deficient in some areas as an English teacher. Wormstadt recounted that one family had decided to have their children take online English classes, and three other families were considering this option due to the possibility of relator being their children's English teacher.

Wormstadt also listed two examples of relator's poor classroom supervision in April 2008. One instance involved relator being so absorbed with phone texting while at his desk that he was unaware of Wormstadt's presence in the classroom or of students' behavior and lack of productivity. The second instance, which occurred less than a week later, involved relator leaving his classroom unsupervised while he talked on his cell phone in the hallway.[1] Wormstadt did not answer questions, and at the end of the meeting, the school board voted unanimously to affirm its earlier decision.

Relator resigned from all duties at Windom on September 4, 2009, and the school board approved his resignation at its regular meeting on September 14, 2009. Relator petitioned this court for a writ of

---

1. On April 16, 2009, relator was given a written reprimand regarding the April incidents that includes additional facts about the incidents. During the August 4 school board meeting, the parties did not refer to this letter or to the fact that relator was reprimanded.

certiorari, which this court issued on September 18, 2009.

## ISSUES

1. Does this court have jurisdiction to hear this case?

2. Did the school board's decision not to renew relator's coaching position violate his statutory rights under Minn.Stat. § 122A.33, subd. 2?

3. Did the school board's decision not to renew relator's coaching position violate his constitutional due process rights?

4. Are the issues raised by relator moot because relator resigned from all duties at Windom on September 4, 2009?

## ANALYSIS

### 1. Jurisdiction

■ Respondent argues that this court lacks jurisdiction over this matter because relator's petition for a writ of certiorari was untimely. Under Minn.Stat. § 606.01 (2008), a writ of certiorari "shall be issued within 60 days after the party applying for such writ shall have received due notice of the proceeding sought to be reviewed thereby." *See* Minn. R. Civ.App. P. 115.01 (stating that the appeal period for decisions reviewable by certiorari is "governed by the applicable statute"). A party's failure to meet the time requirements of Minn.Stat. § 606.01 is a jurisdictional defect. *Flaherty v. Ind. Sch. Dist. No. 2144*, 577 N.W.2d 229, 233 (Minn.App. 1998), *review denied* (Minn. June 17, 1998). "[I]f the writ of certiorari is not timely issued or served, the writ must be discharged for lack of jurisdiction." *Hickman v. Comm'r of Human Servs.*, 682 N.W.2d 697, 700 (Minn.App.2004).

■ The school board decided not to renew relator's coaching assignment on May 11, 2008, and informed relator of its decision in a letter dated May 12, 2008. The school board claims that the period for petitioning for a writ of certiorari expired 60 days later, although its decision did not become final until after the August 4, 2008 meeting affirming its earlier decision. *See* Minn. R. Civ.App. P. 103.03(g) (allowing party to appeal from "a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding").

We conclude that the school board's decision lacked finality until after the August 4 meeting. Until after the August 4 vote, the school board could have altered its decision upon hearing relator's response to its reasons for the non-renewal. Relator's failure to petition for a writ of certiorari was due in part to the decision of the school board, consistent with the statutory requirements of Minn.Stat. § 122A.33, subd. 3 (2008), to allow him to request the reasons for the school board's decision and to permit him to appear at a school board meeting to respond to the school board's initial decision. As such, the school board's decision was not final until August 4, and relator's appeal was timely.

### 2. Violation of Statutory Rights

■ This court will reverse a school board decision "when it is fraudulent, arbitrary, unreasonable, unsupported by substantial evidence not within its jurisdiction, or based on an error of law." *Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d 671, 675 (Minn.1990). Questions of statutory construction are legal questions subject to de novo review. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn.2003); *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits*, 664 N.W.2d 1, 7 (Minn.2003).

■ Under Minn.Stat. § 122A.33, subd. 2, "a person employed as a head varsity coach has an annual contract as a coach that the school board may or may not renew as the board sees fit." The statute

requires the school board to take the following actions before it decides not to renew a person's coaching contract:

A school board that declines to renew the coaching contract of a licensed or nonlicensed head varsity coach must notify the coach within 14 days of that decision. If the coach requests reasons for not renewing the coaching contract, the board must give the coach its reasons in writing within ten days of receiving the request. Upon request, the board must provide the coach with a reasonable opportunity to respond to the reasons at a board meeting. The hearing may be opened or closed at the election of the coach unless the board closes the meeting [for reasons of privacy].

*Id.,* subd. 3.

Relator claims that he was entitled to and did not receive the rights to have his case heard before a neutral hearing officer, to "confront his accusers," or to subpoena witnesses in his own defense during the school board's non-renewal process. We reject this claim because under the plain meaning of the statutory language, relator had a one-year coaching contract, and the school board had discretion to decline to renew the position as "it saw fit." *See* Minn.Stat. § 645.08 (2008) (requiring statutes to be construed in accordance with their plain meaning). The statute merely required the school board to notify relator of its decision in a timely fashion, to provide relator the reasons for its decision upon relator's request, and to permit relator to respond to its stated reasons for non-renewal at a school board meeting. These limited rights were honored by the school board in this case, and the school board thus properly exercised its discretion in deciding not to renew relator's coaching contract.

In addition to being contrary to the plain language of the statute, the addition-al rights relator seeks are contrary to this court's decisions in *Savre v. Indep. Sch. Dist. No. 283,* 642 N.W.2d 467 (Minn.App. 2002) and *In re Matter of Hahn,* 386 N.W.2d 789 (Minn.App.1986), *review denied* (Minn. July 13, 1986). In *Savre,* this court ruled that a probationary teacher had no right to a hearing to challenge a school board's decision not to renew her teaching contract and that the right to a hearing was available only when a probationary teacher was terminated for cause. *Id.* at 472. In *Savre,* the relevant statutory language gave the school board unfettered discretion to determine whether to renew the contract "as the board shall see fit." *Id.* Here, the operative language is "as the board sees fit." The *Savre* court ruled that the school board's failure to follow the evaluation provisions for a probationary teacher "did not affect its complete discretion not to renew relator's teaching contract." *Id.* Although the language of the statute at issue here is slightly different, this difference does not alter the school board's broad discretion to decide a renewal issue, nor is there a reason to do so because of differences in the teaching positions.

Further, Minn.Stat. § 122A.33 does not provide for the rights relator seeks in a school board decision on whether to renew a coaching position. The rights that relator requests are within the ambit of greater protections specifically provided by statute for tenured teachers subject to continuing contracts, and, in a restricted manner, to probationary teachers. *See* Minn. Ch. 122A.40, subds. 5, 7, 13, and 14 (2008). This incremental difference in treatment is explained by the differences in permanency and importance of the respective positions. *See Savre,* 642 N.W.2d at 472 (stating that appellate court "must look at statute as a whole when construing its specific provisions"); *see also* Minn. Stat. § 122A.33, subd. 1 (allowing employ-

ment of non-licensed individual who "does not have a bachelor's degree" to serve as a head varsity coach).

■ As this court explained in *Hahn*, "[t]he legislature has taken steps to provide a certain class of coaches with minimal due process rights when their coaching duties are terminated. A board decision not to offer an employee coaching duties for a subsequent year does not constitute a termination." 386 N.W.2d at 791. In *Hahn*, this court affirmed a school board's non-renewal of a teacher's coaching position at the end of a school year, ruling that a letter notifying the teacher that the school board had voted not to renew his coaching contract was sufficient notice under a predecessor statute to Minn.Stat. § 122A.33. *Id.*[2]; *cf. Allen v. Bd. of Educ. of Indep. Sch. Dist. No. 582*, 435 N.W.2d 124, 127 (Minn.App.1989) (recognizing that there is "no authority preventing a school district from refusing to renew an annual contract of a probationary teacher for arbitrary reasons"), *review denied* (Minn. Apr. 19, 1989).

Relator relies on caselaw that addresses teacher discharges or terminations, rather than non-renewal of a coaching position subject to section 122A.33. Because very different statutory mandates address teacher terminations and teacher non-renewals, teacher termination cases are not authoritative here. *See generally* Minn. Stat. § 122A.40 (2008) (addressing the various circumstances under which a probationary or tenured teacher may be subject to a requested or unrequested leave of absence, discharge, or termination, and the

rights available to the teacher for those types of proceedings).

Finally, relator also claims that the school board failed to meet the required provisions of Minn.Stat. § 122A.33; namely, that it failed to provide relator with written reasons for its non-renewal decision and that the August 4 hearing was "futile" because the school board had hired a new basketball coach on June 6, 2009. As to the written reasons for non-renewal, the school board decided not to renew relator as basketball coach on May 11 and informed him of its decision the next day; relator asked for written reasons for the school board's decision on May 20; and relator received the written reasons for his non-renewal on May 28. As the school board was required to give written reasons for its decision within ten days only if requested, the school board satisfied this requirement by its letter of May 28.

While relator claims that other reasons were later added for non-renewal of his coaching assignment, the record does not support this claim. To the contrary, the record shows that Wormstadt and the school board strictly adhered, almost in a formulaic manner, to the given reasons for relator's non-renewal, and that any additions to the given reasons were merely elaborative. In addition, although the school board may have hired a new basketball coach during the pendency of its proceedings, the purpose of Minn.Stat. § 122A.33, subd. 3, is informational: to provide a coach notice of non-renewal of the position and the opportunity to respond. The statute does not allow a coach the right to otherwise challenge or overturn a school board decision. Thus, the

---

**2.** While the *Hahn* court noted that appointment of a hearing examiner is required in teacher termination cases and commented favorably that the school board in that case had appointed a hearing examiner, 386 N.W.2d at 792, the statute at issue here does not provide

relator, who was not terminated, with the right to a contested case hearing or the right to appointment of a hearing examiner. Therefore, to the extent that *Hahn* reaches the issue of appointment of a hearing examiner, it is not controlling here.

school board's decision to hire another coach following its decision not to renew relator's coaching position is not germane to this case. Because relator received the rights that were required by Minn.Stat. § 122A.33 and because the rights that relator complains he did not receive were not provided for by the statute, the school board's decision was not "arbitrary or unreasonable" for purposes of our review. *See Dokmo,* 459 N.W.2d at 675.[3]

*3. Due Process*

■ Relator further argues that the proceedings involved in the non-renewal of his coaching position violated his constitutional due process rights. The Due Process Clauses of the U.S. and Minnesota Constitutions require that a party receive adequate notice and an opportunity to be heard before being deprived of life, liberty, or property. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *State v. Fabian,* 755 N.W.2d 792, 794 (Minn.App.2008) ("In general, due process requires notice and a meaningful opportunity to be heard before a fair and impartial decisionmaker.").

■ However, "[t]o have a property interest, a[n] ... employee must have a legitimate claim of entitlement to continued employment; a unilateral expectancy is insufficient." *Phillips v. State,* 725 N.W.2d 778, 783 (Minn.App.2007), *review denied* (Minn. March 28, 2007). "A property interest stems from an independent source, such as a statute or contract that secures certain benefits and that supports claims of entitlement to those benefits." *Id.* (quotation omitted). Our supreme court has ruled that an untenured teacher

at a public school does not have a constitutional due process interest in his job after his contract expired and a board of regents decided not to rehire him. *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *see also Geddes v. Northwest Mo. State Univ.,* 49 F.3d 426, 429 (8th Cir.1995) (ruling that "[a]bsent unusual circumstances, a teacher in a position without tenure or a formal contract does not have a legitimate entitlement to continued employment"). Because relator's coaching job was by annual appointment, consistent with Minn.Stat. § 122A.33, any property interest that he had in his coaching job ended when his annual coaching contract ended, and any interest in a future appointment was a mere expectancy not subject to due process protection. *See Phillips,* 725 N.W.2d at 783 (ruling that when term of untenured teacher's contract did not provide for automatic renewal of teaching position, teacher had no property interest in reemployment under procedural due process analysis).

*4. Mootness*

■ The school board argues that relator's claim was rendered moot by his September 4, 2009 resignation. This court will decide only actual controversies and will not issue advisory opinions. *In re McCaskill,* 603 N.W.2d 326, 327 (Minn. 1999). In general, if an event makes effective relief impossible or a decision on the merits unnecessary, dismissal on the ground of mootness is appropriate. *In re Application of Minnegasco,* 565 N.W.2d 706, 710 (Minn.1997). But an appeal is not moot when the claim raised is capable of

---

**3.** As a separate issue, relator argues that the school board's non-renewal decision is not supported by substantial evidence because the school board did not produce evidence at the August 4 meeting that relator failed to perform as basketball coach. However, the record includes documentary and testimonial evidence from both school board meetings, which amply support its decision. Minn.Stat. § 122A.33 did not require the school board to offer evidence at the August 4 hearing: that hearing was held only to allow relator to "respond" to the reasons for the non-renewal decision.

repetition yet evades review, or when collateral consequences attach to the judgment. *McCaskill,* 603 N.W.2d at 327. Mootness is a "flexible discretionary doctrine, not a mechanical rule that is invoked automatically." *State v. Rud,* 359 N.W.2d 573, 576 (Minn.1984).

In related factual contexts, Minnesota courts have declined to dismiss cases involving similar issues on mootness grounds. *See, e.g., Falgren v. State, Bd. of Teaching,* 545 N.W.2d 901, 903 (Minn.1996) (ruling teacher license revocation case not moot, even though teacher died during pendency of case); *Star Tribune v. Bd. of Educ., Spec. Sch. Dist. No. 1,* 507 N.W.2d 869, 871 (Minn.App.1993) (ruling that school board issue involving whether to conduct open meetings regarding employee issues did not become moot due to resignation of employees, because decision would determine how school board performed its future public duties). Because this case could give guidance to school boards in their actions with regard to modification of teacher job duties not protected by contract and because relator held a legitimate interest in the outcome of this case irrespective of whether he was no longer employed at Windom, we reject the school board's mootness argument.

Furthermore, exception to the mootness doctrine is available for issues that are "functionally justiciable" and of "public importance and statewide significance" and thus should be decided immediately. *Citizens for Rule of Law v. Senate Comm. on Rules & Admin.,* 770 N.W.2d 169, 176 (Minn.App.2009) (quotation omitted), *review denied* (Minn. Oct. 20, 2009). "A case is functionally justiciable if the record contains the raw material (including effective presentation of both sides of the issues raised) traditionally associated with effective judicial decision making." *Id.* (quotation omitted).

## DECISION

This court had jurisdiction over this certiorari appeal because it was timely filed from a final decision of the school board. The school board properly followed statutory mandates in deciding not to renew relator's annual coaching contract, and its decision did not violate constitutional due process principles and was not moot.

**Affirmed.**