*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1840**

In the Matter of the Administrative Order
with Penalty Issued to Architektur, Inc.,
Philip Carlson and Virginia Carlson,
a/k/a Gina Carlson.

**Filed September 12, 2016
Affirmed
Worke, Judge**

Minnesota Department of Labor and Industry
File No. 80-1900-31673

Philip Carlson, Virginia Carlson, Wayzata, Minnesota (pro se relators)

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, Minnesota (for respondent Commissioner of Minnesota Department of Labor and Industry)

Considered and decided by Smith, Tracy M., Presiding Judge; Worke, Judge; and Reilly, Judge.

# UNPUBLISHED OPINION

**WORKE**, Judge

Relators challenge an order by the Minnesota Department of Labor and Industry (DLI) affirming a default administrative order and penalty based on a determination that relators held themselves out as building contractors without the required license. We affirm.

**FACTS**

On May 6, 2014, the DLI issued an administrative order requiring relators[1] Philip and Virginia Carlson to cease and desist representing themselves as residential building contractors because they were unlicensed, and issued a monetary penalty. In the administrative order, the DLI alleged the following facts.

In October 2012, relators entered into a contract with homeowners to construct a home. The contract listed relators as a "Design/Builder," and stated that their company, Architektur, Inc., would provide the design and construction of a home for approximately $295,000. Relators' work was to encompass: excavation, concrete and masonry, carpentry, exterior and interior finishing, roofing, and drywall and plaster. The homeowners delivered a down payment. In December 2012, relators sought an additional payment from the homeowners for work that the homeowners did not authorize. Several months later, relators affixed an addendum to the contract for work in excess of $50,000 that the homeowners did not authorize.

In March 2013, relators submitted a $156,379 "draw request" to the homeowners' financing bank. In their submission, relators stated that as the "design-builder" they certified to the homeowners that work had progressed or would progress in accordance with the contract terms and that the subcontractors were entitled to payment. The financing bank did not issue payment because no work had been performed. In April

---

[1] Relators owned and operated Architektur, Inc., which they described as a "design-build" company and a "non-profit institution that helps homeowners be their own general contractor." Architektur is not a party to this appeal.

2013, the homeowners terminated the contract, citing relators' demands for payment for work that had not started. Relators acknowledged receipt of the contract termination, billed the homeowners an additional $23,207, and filed a lien against the homeowners' property for $22,207, alleging improvements to the property.

Following receipt of the May 6, 2014 administrative order, relators requested a hearing on the allegations. A conference was scheduled with an administrative-law judge (ALJ) for August 27, 2014. Relators were served notice of the hearing, informing them that their failure to appear at any hearing may result in their default, which could result in the allegations being deemed true and the proposed action being upheld. Due to criminal charges filed against relators in July 2014, the administrative matter was continued several times.

A prehearing telephone conference was scheduled in the administrative matter for February 10, 2015. Relators, who in the criminal matters had been sentenced in November 2014 to one year in the Hennepin County Workhouse, sent the ALJ a letter from the workhouse requesting another continuance. Relators' request was granted, and a hearing was scheduled for May 19, 2015. Notice of the hearing was sent via U.S. mail to relators at the workhouse, and the mail was not returned. As with all prior orders, relators were informed that failure to appear may result in a default order wherein the facts alleged could be taken as true.

On May 19, 2015, relators failed to appear at the hearing and the ALJ found them in default. The ALJ concluded that the DLI complied with all procedural requirements, that relators received proper notice, and that because relators were in default, the

3

allegations were taken as true and deemed proved. On June 24, 2015, the ALJ issued a report recommending that the DLI take disciplinary action against relators. The ALJ's findings and recommendation, along with a notice that relators may serve exceptions and arguments regarding the report on the DLI, were mailed to relators at the workhouse.

On July 6, 2015, the DLI sent notice to relators at their Wayzata address informing them that an ALJ found relators in default and that relators were given until July 28, 2015, to send any arguments and exceptions to the DLI. On July 22, relators sent a letter to the ALJ stating that they did not receive notice of the May 19 hearing and requested that it be rescheduled. Relators failed to send the DLI comments, arguments, or exceptions on the ALJ's report, and the record was closed on July 28.

On October 8, 2015, the DLI accepted the ALJ's recommendation, issued a $2,500 penalty, and ordered relators to cease and desist holding themselves out as residential building contractors. Relators petitioned for certiorari review.

## D E C I S I O N

### *Violation of constitutional provisions*

Relators argue that their procedural due-process rights were violated when the DLI issued an administrative order finding relators in default after relators failed to appear at the May 19 hearing, claiming that they did not receive notice of the hearing.

We will affirm an administrative agency's decision following a contested-case hearing unless its findings, inferences, conclusions, or decisions are

> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or

4

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) unsupported by substantial evidence in view of the entire record as submitted; or

(f) arbitrary or capricious.

Minn. Stat. § 14.69 (2014).

Whether an agency has violated a person's procedural due-process rights is a question of law that this court reviews de novo. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). Procedural due process requires that a party receive "adequate notice and an opportunity to be heard before being deprived of life, liberty, or property." *Christopher v. Windom Area Sch. Bd.*, 781 N.W.2d 904, 911 (Minn. App. 2010), *review denied* (Minn. June 29, 2010). Appellate courts conduct a two-step analysis to determine whether the government has violated an individual's procedural due-process rights:

> First, [this court] must identify whether the government has deprived the individual of a protected life, liberty, or property interest. . . . [I]f the government's action deprives an individual of a protected interest, then the second step requires [this court] to determine whether the procedures followed by the government were constitutionally sufficient.

*Sawh*, 823 N.W.2d at 632 (quotation and citation omitted).

Relators have a protected property interest because they were fined $2,500. We must now determine whether the procedures followed by the DLI were constitutionally sufficient.

Minnesota law allows the DLI to regulate contractor licensing, and provides that service of documents may be effectuated by mail, or by personal service. Minn.

5

Stat. § 326B.082, subds. 1, 3 (2014). "Service by mail shall be accomplished in the manner provided in Minnesota Rules, part 1400.5550, subpart 2." *Id.*, subd. 3.

> Service by mail . . . is effective upon placing the item to be served in the mail or delivering it to the authorized agent of the express mail service. Postage must be prepaid. Mail to a person other than a state agency shall be addressed to the last known address of the person.

Minn. R. 1400.5550, subp. 2 (2015). Service on a person confined in a federal or state institution must be accomplished by serving the chief executive officer of the institution. *Id.*, subp. 4 (2015). But subpart 4 does not apply here because the Hennepin County Workhouse is a county facility and not a state or federal facility.

This court has held that there was no procedural due-process violation when a city council sent notice of an adverse decision through first-class mail to an address provided. *Resolution Revoking License No. 000337 W. Side Pawn*, 587 N.W.2d 521, 524 (Minn. App. 1998), *review denied* (Minn. Mar. 30, 1999). Therefore, service by mail to relators' address at the workhouse was constitutionally sufficient. Moreover, relators initially responded to the service while in the workhouse; thus, they received actual notice.

For nearly one year, relators knew that they had a pending administrative-law case involving penalties because they sought and were granted continuances. Relators do not dispute that they received the DLI's initial administrative order from May 6, 2014, and other orders regarding continuances. Relators claim, however, that they did not receive notice of the May 19 hearing and were deprived of an opportunity to be heard at that hearing. They also claim that they did not receive notice of the default ruling because notice was sent to their address in Wayzata when they were in the workhouse.

6

But the record shows that on May 6, 2015, the Office of Administrative Hearings (OAH) sent relators notice of the May 19, 2015 hearing, and sent the ALJ's report and recommendation upon default to the workhouse address on June 24, 2015. Attached to the ALJ's report was a notice informing relators they could file exceptions and arguments with the DLI, providing a telephone number and address to do so. The OAH created certificates of service indicating notice was mailed to relators' last known address at the workhouse. *See* Minn. R. 1400.5550, subp. 1 (2015).

In sum, service by mail to relators at the workhouse was constitutionally sufficient to provide notice and an opportunity to be heard. Because relators failed to appear by telephone at the May 19, 2015 hearing, and were given notice of the consequences of failing to appear, the ALJ's recommendation upon default and the DLI's subsequent order did not violate relators' procedural due-process rights.

### Lack of statutory authority or jurisdiction

Relators also argue that they are in the "design-build" profession, and that the DLI does not have authority to regulate their "design-build" activities. *See* Minn. Stat. § 14.69(b) (stating that we will affirm an agency's decision unless its findings, inferences, conclusions, or decisions are in excess of its statutory authority or jurisdiction).

"Administrative agencies are creatures of statute and they have only those powers given to them by the legislature." *In re Hubbard*, 778 N.W.2d 313, 318 (Minn. 2010). Whether an administrative agency has acted within its statutory authority is a question of law that we review de novo. *Id*.

The commissioner of the DLI has the power to regulate "residential contractors, residential remodelers, residential roofers, [and] manufactured home installers." Minn. Stat. §§ 326B.02, subd. 1, .082, subds. 1, 7 (2014). The DLI may enforce all applicable law in chapter 326B, and issue penalties against a person required to have a license. Minn. Stat. § 326B.082, subds. 1, 7. If not exempted, a person who meets the definition of a "residential building contractor," must be licensed by the DLI. Minn. Stat. § 326B.805, subds. 1, 6 (2014). A person engaged in "design-build" activities is not listed as one exempted from having to obtain a residential-building-contractor license. *Id.*, subd. 6.

A "residential building contractor" is

> a person in the business of building residential real estate, or of contracting or offering to contract with an owner to build residential real estate, by providing two or more special skills as defined in this section. A residential building contractor may also contract or offer to contract with an owner to improve existing residential real estate.

Minn. Stat. § 326B.802, subd. 11 (2014). Special skills in the section include: excavation, masonry and concrete, carpentry, interior and exterior finishing, roofing, and drywall and plastering. *Id.*, subd. 15 (2014). The DLI's administrative order adopted the ALJ's findings that relators entered into a contract with homeowners for the construction of a home, and that relators' sworn construction statement for the new home exhibited a scope of work encompassing: excavation, concrete/masonry, carpentry, interior and exterior finishing, roofing, and drywall/plaster.

8

When a party is in default in an administrative-law hearing, "the allegations . . . set out in the notice of and order for hearing or other pleading may be taken as true or deemed proved without further evidence." Minn. R. 1400.6000 (2015). Because relators were in default, the facts in the ALJ's order are deemed proven. Therefore, because relators were contracting with homeowners for work involving multiple skill categories associated with residential building contractors, relators were holding themselves out as residential building contractors without a license.

Relators argue that the "design-build" profession is a distinct activity from general contracting. Even if this were true, calling oneself a "design-builder" does not mean one cannot also fit under the statutory definition of a residential building contractor. Additionally, there is no evidence in the record that distinguishes relators as "design-builders." The record shows that the DLI had authority to regulate relators' activities because relators were engaged in activities typical of residential building contractors.

Relators raise several other arguments in their brief. We decline to consider them, however, because default judgment was appropriate; as such, the allegations set out in the DLI's order are deemed true and proved, and relators failed to raise any of their additional arguments below. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that, generally, matters not raised below will not be considered on appeal).

**Affirmed.**